SARAH M. MYGATT et al., as Surviving Trustees, etc., Respondents, v. GEORGE S. COE, Appellant.

Covenants of seizin and of right to convey, in a deed of real estate executed by one who has no title, are broken by the delivery of the deed and become choses in action; they do not run with the land, and so, do not pass to subsequent grantees, without an assignment of the cause of action.

Covenants of warranty and of quiet enjoyment entered into jointly by the owner of the fee and a stranger to the title, who does not assume any title in himself or right to convey, do not run with the land as against the stranger, and are not available in favor of a subsequent grantee who holds no assignment of the cause of action arising from a breach of the covenants. (BRADLEY, HAIGHT and BROWN, JJ., dissenting.)

Defendant and his wife joined in a deed of real estate which one R. had assumed to convey to her and which was in her possession. The deed contained a joint covenant, on the part of defendant and his wife, that she was lawfully seized of an estate in fee, also joint covenants of warranty and of quiet enjoyment. F., the grantee, entered into possession and thereafter executed a mortgage upon the premises. Subsequently L., who was in possession claiming title through various mesne conveyances under said deed, was ousted from the premises under a judgment in an action of ejectment brought by persons claiming title paramount to that conveyed by R. to defendant's wife. Thereafter plaintiffs, who were the holders of said mortgage, foreclosed the same, sold and bid in the premises under the judgment in the foreclosure suit. Upon their application the judgment of ejectment was opened and they were allowed to come in and defend, but failed in their defense and judgment was entered against them; they never at any time had possession of the premises. In an action brought by them upon the covenants in the deed to recover the amount of the mortgage, held (BRADLEY, HAIGHT and BROWN, JJ., dissenting), that the covenants did not run with the land as against defendant who was a stranger to the title; that he was not estopped from claiming that he occupied that position; and that, therefore, the said covenants were not available against him in favor of plaintiffs, no assign-

ment of the cause of action arising from the breach having been made to them.

The authorities bearing upon the question as to what covenants run with land collated and discussed.

*Dickinson* v. *Hoome's Admr.* (8 Grat. 353, 402); *Lydick* v. *B. & O. R. R. Co.* (17 W. Va. 427), so far as they are authorities opposed to these views, disapproved.

*Packenham's Case* (Y. B. 42 Edw. III, 3), distinguished.

*Mygatt* v. *Coe* (44 Hun, 31), reversed.

(Argued December 10, 1890; decided January 22, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 31, 1887, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This was an action to recover damages for an alleged breach of covenants.

On the 15th day of February, 1856, Ebenezer L. Roberts acquired through Charles Leech, a referee, an unincumbered estate, in fee simple, in the premises described in the complaint, and, to secure the payment of $5,500 of the purchase-price, executed and delivered on that day a mortgage on the premises to Leech, as referee, which was duly recorded on the next day and became the first lien. May 15, 1856, Ebenezer L. Roberts and his wife conveyed the premises, in fee simple, subject to said mortgage to William Tasker, who, on the same day, executed and delivered a mortgage on said premises to secure the payment of $1,800 to Ebenezer L. Roberts, which was duly recorded on the next day and became the second lien. October 1, 1856, Tasker conveyed the premises, in fee simple, to Ephraim H. Howell by a deed dated that day, which recited a consideration of $12,000, that it was subject to the first mortgage, but made no reference to the second mortgage, and contained covenants of seizin against incumbrances, of warranty and for further assurance. This deed was duly recorded December 4, 1856. September 18, 1857, Ebenezer L. Roberts began an action against William Tasker, the mortgagor, Ephraim H.

Howell (then the owner of the fee) and Cecilia A. Howell, his wife, to foreclose his said mortgage. The summons was duly and personally served on William Tasker and Cecilia A. Howell, but before it was served on Ephriam H. Howell, and on the 19th of October, 1857, he disappeared, and for some months it was believed that he had left the state. In November, 1857, the summons was ordered served upon him by publication, and the statutory requirements were, in form, complied with. Howell had not left the state, but committed suicide (as was discovered in March, 1858) on the 19th of October, 1857. He died intestate, seized in fee of said premises, and left five infant children, who were his heirs at law, and a widow. February 17, 1858, a judgment of foreclosure and sale was entered in this action, and March 13, 1858, the lands were sold and assumed to be conveyed under said judgment to Ebenezer L. Roberts. These proceedings were had in ignorance of the fact that Howell was dead. Roberts recorded his deed, took possession under it, and July 15, 1858, he paid off the first mortgage for $5,500 and assumed to convey the premises to Almira S. Coe by a deed which she duly recorded, and she immediately entered into possession of the premises thereunder, and continued therein until April 12, 1867, when, in consideration of $18,500, she assumed to convey the premises to Nancy Fisher by a warranty deed, in which defendant George S. Coe, her husband, joined. By this deed Almira S. Coe and George S. Coe jointly covenanted: (1) That Almira S. Coe was seized of the premises. (2) That she had good right to convey them. (3) That the premises were unincumbered. (4) That the grantee should quietly enjoy the premises. (5) That they would give further assurance. (6) That they, their heirs and representatives would forever warrant and defend the grantee, her heirs and assigns, against all persons lawfully claiming or to claim the same. The grantee recorded her deed and entered into possession thereunder, and December 21, 1869, assumed to mortgage the premises to the plaintiffs to secure the payment of $15,000, which mortgage was duly recorded. On the 19th of April, 1871, Nancy Fisher assumed to convey the premises in fee to

one Henry W. Fuller, who entered into possession under his deed and remained therein until November 11, 1874, when he assumed to convey said premises in fee to Clara B. Leavitt, who entered into possession under her deed. In 1878 the heirs at law of Ephraim H. Howell recovered the land by an action in ejectment and ousted Clara B. Leavitt. Thereafter the plaintiffs began an action against Nancy Fisher, Charles J. Fisher, her husband, Henry W. Fuller, Clara B. Leavitt and James M. Leavitt, her husband, for the foreclosure of their said mortgage for $15,000, which resulted in a judgment of foreclosure June 5, 1879, and, pursuant to this judgment, the premises were assumed to be sold and conveyed August 14, 1879, to the plaintiffs for $2,000, that being the highest sum bidden at the sale. (85 N. Y. 30.) In November, 1879, the judgment of ejectment was opened and the plaintiffs in this action were allowed to come in and defend, and on the 27th of January, 1883, a judgment was entered in the ejectment action against these plaintiffs, which was affirmed by the Court of Appeals April 29, 1884 (95 N. Y. 617), and May 10, 1884, the judgment of the Court of Appeals was made the final judgment of the court of original jurisdiction. The plaintiffs never, at any time, had possession of the premises.

On January 3, 1884, Almira S. Coe died, and in November of that year this action was begun to recover the amount of the mortgage given by Nancy Fisher to the plaintiffs, with interest thereon from May 1, 1878, on the grounds that the covenants of seizin, for quiet enjoyment and general warranty were broken. The case was tried before the court without a jury, which ordered a judgment for the plaintiffs for the amount due on the mortgage, principal and interest.

*Wm. S. Cogswell* for appellant. There was no privity of estate between appellant and Nancy Fisher. He never had nor claimed any title or estate in the premises in question. Therefore his covenants that his wife was seized for quiet possession, etc., did not run with the land; they were personal covenants between appellant and Nancy Fisher, and could not

pass either by her mortgage or conveyance of the premises. (2 Washb. on Real Prop. 284; *Cole* v. *Hughes*, 54 N. Y. 444, 448; *Snoddy* v. *Leavitt*, 105 Ind. 357; *Gibson* v. *Holden*, 155 Ill. 199.) If it be held that appellant's covenants ran with the land, then the respondents never acquired any right to them, either by the mortgage from Nancy Fisher or by the deed from the sheriff of Kings county. (Tiedman on Real Prop. § 860; Willard on Real Estate, 414; *Adams* v. *Conover*, 87 N. Y. 422, 430; *Trimm* v. *Marsh*, 54 id. 599, 607; *Odell* v. *Montrose*, 68 id. 506; *Howell* v. *Leavitt*, 95 id. 621, 622; *Dunning* v. *Leavitt*, 85 id. 30, 36; Code Civ. Pro. § 1632; 4 Kent's Comm. 515, 516; Rawle on Cov. 318; Washb. on Real Prop. 470; *Bedloe* v. *Wadsworth*, 21 Wend. 120; *Shattuck* v. *Lamb*, 65 N. Y. 49; Sedg. on Dam. 174; *Adams* v. *Conover*, 22 Hun, 427; 87 N. Y. 422.) If it held that the respondents were entitled to recover, the court below erred in admeasuring damages. (Tiedman on Real Prop. § 861; *Peters* v. *McKeon*, 4 Den. 546; *Staats* v. *Ten Eyck*, 3 Caines, 111; *Kinney* v. *Watts*, 14 Wend. 38; *Kelly* v. *Dutch Church*, 2 Hill, 115.)

*Sidney S. Harris* for respondents. The plaintiffs as purchasers and grantees under the foreclosure sale acquired all the right, title and interest of Nancy Fisher, the mortgagor, and all the rights, title and interest they had themselves as mortgagees at the date of the mortgage. (*Rector, etc.,* v. *Mack*, 93 N. Y. 488; *Phyfe* v. *Riley*, 15 Wend. 255; *Hubbell* v. *Moulson*, 53 N. Y. 227; *Wilson* v. *Wilson*, 32 Barb. 343; 1 Jones on Mort. § 13; Thomas on Mort. 16; *White* v. *Rettenweger*, 30 Ia. 268–271; *Andrews* v. *Wolcott*, 16 Barb. 25; *Kellogg* v. *Wood*, 4 Paige, 578; *Howell* v. *Dunning*, 90 N. Y. 241; *Vroon* v. *Ditmar*, 4 Paige, 526; *Brainard* v. *Cooper*, 10 N. Y. 358; *Packer* v. *R. & S. R. R. Co.*, 17 id. 288; 2 Jones on Mort. § 1654; *White* v. *Evans*, 47 Barb. 179.) If it had been true that the plaintiffs derived their rights upon the covenants through Mrs. Leavitt and that at that time the covenants were broken, the plaintiffs would still be entitled to

maintain this action as the real parties in interest. (*Andrews* v. *Appel*, 22 Hun, 429; *Roberts* v. *Levy*, 3 Abb. [N. S.] 316; *Schofield* v. *H. Co.*, 32 Ia. 317; *Trustees* v. *Lynch*, 70 N. Y. 451; *Ernst* v. *Parsons*, 54 How. Pr. 163; *Robert* v. *Levy*, 3 Abb. [N. S.] 316; 4 Kent's Comm. 472; Code Civ. Pro. § 449.) If it were necessary, it would be successfully claimed that the covenants inure to the benefit of the plaintiffs as mortgagees. (*White* v. *Whitney*, 3 Metc. 81; Rawle on Covenants, 316, 317, §§ 216, 218; *Spencer's Case*, 1 Smith's L. C. 199; *Kane* v. *Sanger*, 14 Johns. 83.) Where the grantee has been unable to obtain the possession of premises on account of a paramount outstanding title and has in fact never been ousted from the possession, he may maintain an action for the breach of the covenant. (*Shattuck* v. *Lamb*, 65 N. Y. 499; *Scriver* v. *Smith*, 100 id. 447; Rawle on Covenants [5th ed.], § 139; *Dewall* v. *Craig*, 2 Wheat. 45; *Whitney* v. *Dinsmore*, 6 Cush. 124.) The action is properly brought by the plaintiffs against the defendants. (*Preiss* v. *Le Poidevin*, 9 N. Y. S. R. 700; *Withy* v. *Mumford*, 5 Cow. 137; *Suydam* v. *Jones*, 10 Wend. 184; *Ford* v. *Wadsworth*, 19 id. 337; *Boddee* v. *Wadsworth*, 21 id. 120, 124; 3 Washb. on Real Prop. [3d ed.] 662, §§ 19, 20, 21; *Andrews* v. *Walcott*, 16 Barb. 21; *Hunt* v. *Amidon*, 4 Hill, 345; *Withy* v. *Mumford*, 5 Cow. 137; *Burt* v. *Dewey*, 40 N. Y. 286.) The defendant having joined with his wife in the deed to Fisher, which contained the usual full covenants of title, is liable on the covenants. (*Whitbeck* v. *Cook*, 15 Johns. 485; 2 N. Y. Leg. Obs. 209; 61 Ind. 367; Chitty on Plead. 48, 50; *Grant* v. *Shurter*, 1 Wend. 148; *Greenvault* v. *Davis*, 4 Hill, 693; *Grant* v. *Townsend*, 2 Den. 336.) The judge correctly held that plaintiffs were entitled to recover the amount of their mortgage with interest. (*Staats* v. *Ten Eyck*, 3 Caine, 112; *Dominick* v. *Lockwood*, 10 Wend. 142; *Pitcher* v. *Livingston*, 4 Johns. 1; *Bennett* v. *Jenkins*, 13 id. 50; *Sweet* v. *Bradley*, 24 Barb. 549; *Doughty* v. *Duvall*, 9 B. Monroe, 57; *Rickert* v. *Snyder*, 9 Wend. 420; *White* v. *Whitney*, 3 Metc. 81; *Withy* v. *Mumford*, 5 Cow. 137; *Baxter* v. *Ryan*.

13 Barb. 281; *Burt* v. *Dewey*, 40 N. Y. 283; *Cox* v. *Henry*,. 32 Penn. St. 82; 1 Sedg. on Dam. 333; *Flint* v. *Headman*,. 36 Vt. 210; *Harden* v. *Larkin*, 41 Ill. 413; 2 Sutherland on Dam. 264, 280; *Donohue* v. *Emery*, 9 Metc. 68; *Wilson* v. *Wilson*, 5 Foster, 236.)

FOLLETT, Ch. J. Mrs. Fisher, had she been evicted and brought her action in the life-time of Mrs. Coe, could have recovered her damages of this defendant, because he had covenanted directly with her, under his seal, that he would indemnify her for the damages sustained by an eviction. Though Mrs. Coe died before this action was begun, the question of the liability of a surviving joint contractor (*Risley* v. *Brown*, 67 N. Y. 160; *Randall* v. *Sackett*, 77 id. 480) is not raised by the record, and it was conceded on the argument in this court that it does not appear whether the defendant received the whole or any part of the consideration of the deed. Mrs. Coe having no title when she conveyed to Mrs. Fisher, the covenants of seizin and of right to convey were broken by the delivery of her deed and became choses in action, which were not transferred to the subsequent grantees, or, in other words, these covenants did not run with the land. (*Greenby* v. *Wilcocks*, 2 Johns. 1; *Abbott* v. *Allen*, 14 id. 248; *M'Carty* v. *Leggett*, 3 Hill, 134; *Mott* v. *Palmer*, 1 N. Y. 564; *Chapman* v. *Holmes*, 10 N. J. L. 20; 2 Dart's Vend. [6th ed.] 881; Rawle Cov. [5th ed.] §§ 69, 202.) The plaintiffs must recover, if at all, for a breach of the covenants of warranty and of quiet enjoyment.

The important question in this case is, whether covenants of warranty and of quiet enjoyment entered into jointly by the owner of the fee, or one assuming to be its owner, and a stranger to the title, run with the land as against the stranger, and are available in favor of a subsequent grantee who holds no assignment of the cause of action arising from the breach.

Had the plaintiffs been able to allege and prove a deed in which the defendant and his wife had assumed to grant, and had they delivered possession of the premises described and

had covenanted that they were lawfully seized, had good right to convey, and that they would forever warrant and defend, the plaintiffs might, by the aid of the doctrine of estoppel, have prevented this defendant from proving, and the court from finding, that he never had any title, estate or interest in the land. But the parties agreed, and the court found that Roberts assumed to convey the premises to Almira S. Coe. The plaintiffs alleged, which the defendant did not deny, and proved that the defendant and his wife covenanted that she was lawfully seized of an absolute and indefeasible estate of inheritance, in fee simple, in the premises and had good right and lawful authority to convey them. Our attention is called to the finding that the defendant and his wife joined in a deed purporting to convey the land in fee simple to Nancy Fisher. This finding is not inconsistent with the findings and facts admitted already referred to. It is not therein found that this defendant assumed to convey any estate in the premises, nor is it found that he covenanted that he or they were seized and had a right to convey the premises, nor can we infer such a fact in the face of the allegation in the complaint that Mrs. Coe assumed to have the entire title to the premises, and, in legal effect, that the defendant was a stranger to it. Facts admitted by the pleadings have the same force as facts found. If the facts found and admitted are inconsistent, the appellant is entitled to rely upon those most favorable to him. It is unfortunate that the deed which fixes the rights of these parties is not contained in the case, but if a new trial is had this defect will be remedied, and the exact connection of this defendant with the conveyance will be made clear.

"There are three manner of privities, viz.: (1.) Privity in case of estate only. (2.) Privity in respect to contract only. (3.) Privity in respect to estate and contract together." (2 Sugd. Vend. \*714; 4 Cruise's Dig. \*376; Greenleaf's ed. 458.) The term privity in estate denotes mutual or successive relationship to the same rights of property. (*Stacy* v. *Thrasher*, 6 How. [U. S.] 44–59; Green. Ev. §§ 189, 523; Big. Est. [6th ed.] 347.) "There is a certain privity between the grantor

and grantee of the land. It is not the privity arising upon tenure, for there is no fiction of fealty annexed. It is, however, the same sort of privity which enables the grantee of a purchaser to maintain an action upon the covenants of title given to his vendor; and it is moreover a privity of the same nature with that which obtains between the grantor and grantee of terms for life and for years." (*Van Rensselaer* v. *Hays*, 19 N. Y. 68, 91.)

There was no mutual relationship between the defendant and Nancy Fisher or her grantees, nor was there any successive relationship between him and Nancy Fisher or her grantees.

It is not necessary that privity of estate, within the meaning of the feudal law — mutuality — should exist between the covenantor and the covenantee or his successors in interest to carry a covenant of warranty to subsequent grantees. (*Van Rensselaer* v. *Read*, 26 N. Y. 558, 574, 575.) But unless there is either mutuality or succession of interest, this covenant will not run with the land. In this state privity of estate, within the meaning of the law of tenure, seldom arises, except between lessor and the successors of his lessee, or when the covenantor retains a reversionary interest in the land conveyed.

Under the facts found there was no privity of estate, actual or assumed, between the defendant (the covenantor) and Nancy Fisher (the covenantee), only privity by contract. The defendant having no estate, title or interest in or possession of the land conveyed, there could be no privity in estate between him and Nancy Fisher, and not having covenanted or represented that he had an estate, he cannot be estopped from showing that he had none. The only privity which existed between the defendant and Nancy Fisher was by contract, which is insufficient to carry the benefit to subsequent owners of the property to which the covenants relate.

In *Slater* v. *Rawson* (1 Met. 450), the defendant assumed to convey one hundred and thirty acres of land by a deed containing covenants of seizin and warranty. The plaintiff succeeded to the estate of the defendant's grantee through several mesne conveyances, but was evicted from twenty-two acres

under a title which was paramount to that of the defendant. In an action to recover damages for the breach of the covenants, it was held that it appearing that the defendant had neither title nor possession his covenant of warranty did not attach to the land and run with it to subsequent grantees, and that the plaintiff could not recover. Upon the retrial the jury found that the defendant was in and delivered possession of the land when he conveyed, and it was held (6 Met. 439) that seizin was a sufficient estate to attach the covenant to the land and carry it to subsequent grantees, who could sustain an action for its breach. This rule is recognized in other cases. (*Fowler* v. *Poling*, 2 Barb. 300; 6 id. 165; *Beddoe* v. *Wadsworth*, 21 Wend. 120; *Moore* v. *Merrill*, 17 N. H. 75.)

In *Nesbit* v. *Nesbit* (1 Taylor [N. C.] 82, reconsidered and affirmed, Conf. Reports, 318), one Cranston conveyed land to Mary Montgomery, then under age, who afterwards became the wife of Arthur Newman, the consideration for the conveyance being paid by Hugh Montgomery, the father of Mary. Some years after, Hugh Montgomery, in consideration of sixty pounds, paid to him for the use of his daughter, conveyed the premises to one McConnell, covenanting for quiet enjoyment and for further assurance, to be executed by Mary when she should become of age. McConnell afterwards conveyed one-half of the land to the plaintiff, who, being evicted by Mary Newman (formerly Mary Montgomery), sued Montgomery's executors. A verdict was rendered for the plaintiff, but a motion to arrest the judgment was made, on the ground that the covenants in the deed from Hugh Montgomery to McConnell were covenants in gross, and did not run with the land to McConnell's grantee. TAYLOR, J., in speaking for the court, said: " From the whole of this case it may be laid down as a rule, without any exception, that a covenant to run with the land and bind the assignee must respect the thing granted or demised, and that the act covenanted to be done or omitted must concern the lands or estate conveyed. But when it appears upon the face of the declaration that the defendant's testator, who sold this lot, neither had nor pretended to have

any title to it, that, on the contrary, Mary, his daughter, had the complete seizin under the deed from Cranston; that the testator having conveyed no title to McConnell, the plaintiff could, consequently, derive none from him; it may be asked, what is there to create any privity between these parties? The maxim *transit terra cum onere* presupposes a transfer of the land, and when that actually takes place, it forms the medium of a privity between the assignees. Unless, therefore, we make a presumption against the plain statement in the declaration, the title of this lot never ceased to be in the daughter, Mary, from the time Cranston conveyed to her. Suppose the father and mother had entered into the covenants contained in the deed, by a separate instrument, unaccompanied with any conveyance of the land, no one would pretend that an assignee should take the benefit of such a contract. Then, can the case be materially altered by annexing these covenants to a deed of bargain and sale, which, being a conveyance under the statute of uses, transfers only what the bargainor might rightfully convey? For the declaration shows that rightfully he could convey nothing. If one man covenants that another shall quietly enjoy or obtain a conveyance for an estate which is owned by a third, this binds the covenantor and his executors or administrators to the covenantee, but cannot extend to the assignees of the latter. Nor can I conceive that the law is different where a man sells an estate and makes the same covenants, provided it appears upon the declaration that he had no right. In both cases the privity is wanting which forms the basis of reciprocal remedies to the parties."

*Webb* v. *Russell* (3 Term, 393), arose out of the following facts: William Stokes being possessed of a term having some eighty years to run, mortgaged it to Richmond Webb as security for the payment of a debt. At this time, by the law of England, the entire legal estate of the mortgaged premises vested in the mortgagee. October 26, 1780, George Russell leased the premises for eleven years, from Stokes and Webb, and agreed to pay *to Stokes, the owner of the equity of redemp-*

*tion, or to his assigns*, the annual rent of two hundred pounds and to keep the premises in repair. In 1781, Sarah Webb, the plaintiff, acquired the estate of the mortgagor and mortgagee, and brought an action against Russell for the recovery of rent due and for damages for breaking the covenant to repair. The defendant demurred to the declaration. It was held; Lord KENYON speaking for the court: " I cannot conceive how this covenant made with Stokes can be said to run with the land; for Stokes is stated in the declaration to have no interest whatever in the the land, and yet both the implied covenant arising from the yielding and paying, and also the express covenants are entered into with Stokes. It is not sufficient that a covenant is concerning the land, but in order to make it run with the land there must be a privity of estate between the covenanting parties. But here Stokes had no interest in the land of which a court of law could take notice; though he had an equity of redemption, an interest which a court of equity would take notice of. These, therefore, were collateral covenants. And though a party may covenant with a stranger to pay a certain rent in consideration of a benefit to be derived under a third person, yet such a covenant cannot run with the land." Subsequently Stokes sued Russell for the rent and for the breach of the covenant to repair. The facts above stated were pleaded as a defense; and thereupon the plaintiff demurred to the pleas in bar, and judgment was rendered for the plaintiff. Lord KENYON, again delivering the opinion of the court, held that the covenants were covenants in gross, and that the plaintiff could maintain the action. Errors were assigned and the judgment was reviewed in the Exchequer Chamber, where it was affirmed (1 Black. 563). Lord LOUGHBOROUGH, speaking for the court, said : " The term in this case took effect out of the estate of Webb; the covenant with Stokes could not be incident to the estate, nor run with the land; it must be a covenant in gross, and consequently not assignable."

In *Keppell* v. *Bailey* (2 M. & K. 517), many of the previous cases relating to covenants running with the land were analyzed

and reviewed by Lord Chancellor BROUGHAM, and among them
*Webb* v. *Russell*, which was approved, and it was again directly
held that a covenant between a covenantor and a covenantee,
between whom there was no privity in estate, does not run
with the land.   (Pages 543, 546.)

*Cole* v. *Hughes* (54 N. Y. 444), arose out of the following
facts : Voorhies and Dean being adjoining owners, Dean
erected a party-wall, one-half on the land of each, under a
contract, which was recorded, by which Voorhies covenanted
that whenever he, or his heirs or assigns, used the wall, he or
they would pay Dean or his assigns the value of the part so
used.   Voorhies' lot passed by mesne conveyances to the
defendant Hughes, who built on the lot and used the party-
wall.   Dean assigned the contract to the plaintiff, but conveyed
the lot to another.   In an action brought by the assignee of
the contract it was held : (1.) That the covenant to Dean did
not run with his land, and that the right to recover on the
covenant belonged to the plaintiff, the assignee of the covenant,
and not to the grantee of the lot.   (2.) That Voorhies' covenant
to pay for the value of the wall did not run with his lot, and
that there being no privity of estate between Voorhies and
Dean, only a privity by contract, that the covenant did not run
with Voorhies' lot.   The learned judge said in conclusion :
" I am of opinion, therefore, that neither the benefits nor the
burdens run with the land."   The opinion does not proceed
upon the theory that the nature of the covenant was such that
it could not run with the land ; but on the theory that there
being no privity of estate between the covenantor and cove-
nantee, only a privity by contract, that neither the benefits nor
burdens of such covenants run with the land to which they
relate.   Mr. Washburn in his learned treatise upon the law of
real property, says (2 Washb. R. P. *15 [5th ed.] 296) : "16.
It has also been attempted to maintain the doctrine, that
although the *burden* of a covenant to pay rent may not be
imposed upon land in favor of a stranger so as to run with it,
and bind an assignee of the land, a stranger may covenant
with the land-owner in such a manner as to attach the benefit

of the covenant to the land, and have it run with it in favor of whoever may become the owner thereof. It is not pretended that this can be done, except where the covenant is to do some act for the benefit of the estate upon the land itself. The doctrine above stated is advocated by the editor of the American editon of Smith's Leading Cases, is favored by the English Commissioners upon Real Property, and is assumed to be the law in the cases cited below. To sustain it reference is also made to *Packenham's* case, commonly known as the *Prior and Convent* case, and to Coke's opinion.

"But it is believed that the point has never been determined in this way by a full court, though assumed by individual judges, and that, respectable as these opinions in its favor may be, the doctrine contended for is opposed to well-settled principles as well as the highest authority. With a very few exceptions, the uniform current of authorities, from the time of *Webb* v. *Russell* to the present day, requires a *privity of estate* to give one man a right to sue another upon a covenant where there is no privity of contract between them; and, consequently, that where one who makes a covenant with another in respect to land, neither parts with nor receives any title or interest in the land, at the same time with and as a part of making the covenant, it is, at best, a mere personal one, which neither binds his assignee, nor enures to the benefit of the assignee of the covenantee, so as to enable the latter to maintain an action in his own name for a breach thereof."

KENT states the rule in this language: "The distinction between the covenants that are in gross and covenants that run with the land (and which are covenants real, annexed to or connected with the estate, are beneficial to the owner of it, and to him only) would seem to rest principally on this ground that, to make a covenant run with the land, *there must be a subsisting privity of estate between the covenanting* parties." (4 Kent's Com. 473.)

Lord ST. LEONARDS discusses this question at considerable length, and reaches the conclusion that the covenant of a stranger to a title does not run with the land. (2 Sugd. on

Vend. *716, 718, 719, 721 [7th Am. ed.] 168, 170, 171, 173, pp. 25, 26, 33–35, 38; See Platt on Cov. 461; Chitty on Con. [12 ed.] 51; 1 Taylor's L. & T. [8 ed.] § 261.)

In *Hurd* v. *Curtis* (19 Pick. 459), the owners of four mills, which were supplied with water by the same dam, entered into an indenture by which they covenanted for themselves, their heirs, administrators and assigns, to and with each other, their heirs, administrators and assigns, that they would use wheels of a certain construction and limited power in their respective mills. The plaintiff was a party to the indenture and owned an undivided half of one of the mills, and subsequently he acquired the other half. Later the defendants purchased of two of the covenantors their mills, and thereafter used wheels of a different construction and of greater power than those specified in the indenture. In an action brought to recover damages for this breach of the covenant, it was held that there being no privity of contract between the plaintiff and defendants that the defendants were not liable unless there was a privity of estate between them. In discussing this question it was said: "To make a defendant liable to an action of covenant there must be a privity between him and the plaintiff. (*Bally* v. *Wells*, 3 Wils. 29.) As there is no privity of contract between the plaintiff and the defendants, it follows that the defendants are not liable in this action, unless there is a privity of estate between them. Where such a privity exists between the covenantor and the covenantee, and the covenantor assigns his estate, the privity thereby created between the assignee and the other contracting party renders the former liable on all such covenants as regulate the mode of occupying the estate, and the like covenants concerning the same. *And so if the covenantee assigns his estate, his assignee will have the benefit of similar covenants. These covenants are annexed to the land and run with it. But if there is no privity of estate between the contracting parties, the assignee will not be bound by, nor have the benefit of any covenants between the contracting parties, although they may relate to the land he takes by assignment or purchase from one of the parties to the*

*contract.   In such a case the covenants are personal and are collateral to the land."*

Opposed to these authorities are the remarks of the learned American editor of the eighth edition of Smith's Leading Cases, page 192; *Dickinson* v. *Hoomes' Administrator*, 8 Grat. 406. Judge HARE, in his learned note to *Spencer's* case, in the edition of Smith's Leading Cases last referred to, said: "It appears, therefore, to be an exploded idea that privity of estate or tenure is necessary between the covenanting parties in order that covenants may run with the land."

*Dickinson* v. *Hoomes' Administrator* (8 Grat. 353), arose out of the following facts: A father devised to every one of his five children a piece of land, subject to the limitation that if any one died without issue his piece should be divided equally between the survivors or their representatives according to the principles of the law of descents. The five children survived their father, and entered on their several pieces of land.   One of them, John, conveyed his land and the other four children joined in the deed, which contained a covenant of warranty.   This land passed by several mesne conveyences to Dickinson, the plaintiff.   Richard, one of the children and covenantors, died, in the lifetime of John, leaving several children, and afterwards John died without issue, and thereupon Richard's children evicted Dickinson, claiming, not by descent from their father, but under the devise of their grandfather.   An action was brought on the covenant of Richard against his representatives; and it was held that when Richard joined in the deed "he had, in fact, an interest in the subject; an interest which depended on the double contingency of John's dying without issue living at his death, and of Richard's surviving him." (Page 402.)   In considering the question whether it is necessary that some estate should pass from a grantor to a grantee, to carry a grantor's covenant of warranty to subsequent grantees, the learned judge discussed *Prior's* and *Spencer's* cases, and held, in accordance with the rule generally adopted in this country, that it was not necessary that an estate should pass.   But in

discussing this question the court indulged in the following reflections, which were quite unnecessary for the determination of the case, which had been well decided on the first ground stated : "I can see no reason why these covenants, if in their nature they are such as can run with the land, should not run with the land as well as when they are made by a stranger as when they are made by the donor ; but I can see many reasons for the contrary. A person may be willing to purchase land, notwithstanding a flaw in the title, if he can fortify it by proper covenants. The owner may not be sufficiently responsible, but may be able to procure the assistance of responsible friends, or creditors, or others may have sufficient interest to join him in the covenants. But what would these covenants be worth if they could not be enforced by an assignee of the land ? A covenant of seizin, or of right to convey, would never be given in such a case, because it would be known to the parties that as soon as made, it would be *ipso facto* broken. A covenant of warranty, or for quiet enjoyment, would be the most appropriate covenant for such a case ; and yet, to make that covenant effectual, it would be necessary, according to the doctrine contended for, that the covenantee should always retain the property. I am, therefore, of opinion that the covenant of Richard Hoomes runs with the land, even though he should be considered as a stranger to the land." (Page 404.)

In *Lydick* v. *The Baltimore and Ohio Railroad Company* (17 West Va. 427) the court refers to the conflicting views on the question as to whether the covenant of a stranger runs with the land, and says : "It is not necessary in this case to determine which of these views is sound. For, in the case before us, the requisite privity of estate exists according to the views of Washburn, who holds such privity to be necessary." It will be observed that in this case there had been no grant of any kind to the railroad, simply an oral contract for a right of way, which, had it been granted, would have left the reversion in the owner, and would have created a privity of estate according to the strict rule prevailing when land was held by feudal tenure.

The views of Judge HARE and of the court in *Dickinson* v. *Hoomes* have been the occasion of some discussion. A writer in the American Law Register ([N. S.] vol. 2, p. 201) says: " The following topic must be kept distinct from one shortly to be considered, namely, what amount of estate must pass to support the covenants when the covenantee's only title is derived from the covenantor. It is conceded that, in order for covenants in general to run with the land, there must exist a *privity of estate* between the parties. (3 Wilson, 29; 3 T. R. 402; 2 East, 380; 17 Wend. 136.) But eminent legal writers have thought this not to be requisite in covenants for title; nor, indeed, in any covenants intended to benefit the estate of the covenantee. (Hare's Note to *Spencer's* case; Rawle on Cov. 335; 2 Lomax's Dig. 260; 3d Real Prop.; Rep. of Eng. Commissioners.) This opinion has been founded almost exclusively upon the authority of an ancient case, known as the *Prior's* case (Y. B. 42, Ed. III, 3), cited by Lord COKE. In controverting this view, Sir Edward Sugden, now Lord ST. LEONARDS (Sugd. on Vend. & Pur. 472), has subjected the *Prior's* case to a most searching criticism, which results in its complete overthrow as authority on this question, showing that the portions of it particularly relied on were not judicial resolutions, but an addition by the reporter; that the case does not contain the doctrine usually extracted from it, and that it has received no confirmation, but the contrary, from subsequent adjudications.

" It may be safely laid down, that if the doctrine that the covenants for title will run with the land, even when entered into by a stranger to the land, has no better foundation than the authority of this case, it cannot be sustained; and it would seem to be the better opinion, that in order for a *covenantor's* covenants to run with the land, he must also be a *grantor* of the land which they affect. No modern case decides that a stranger's covenants may run with the land; but in a *dictum* of MONCURE, J., in the recent case of *Dickinson* v. *Hoomes' Administrator* (8 Grattan, 406), this doctrine is broadly enunciated. The *dictum* is based, however, on the *Prior's* case,

and authors who have followed it. It is there said that a purchaser of land who suspects an infirmity of title, and doubts the responsibility of the vendor, may fortify the title by covenants of the *grantor's* friends, or other interested parties, and these covenants will run with the land to future assignees. This notion is possibly correct, and, if so, highly important, but is not, we apprehend, in accordance with the common understanding among the members of the legal profession. (7 Jarman's Bythewood, 572.) The introduction of such covenants into conveyances would be a novelty, and probably of doubtful expediency. At least it would not be prudent to rely on such covenants until further adjudications have more fully determined their value."

In the American Law Review (vol. 20, 404), Judge HARE's note is discussed, and the writer, in conclusion, says: " But the authority of *Packinham's* case seems to be overthrown by the investigations of Sugden and Washburn, who produce unquestionable proof that the case was not decided by the court, as reported by Lord COKE, but that Lord COKE's report was the expression of a mere *dictum* by Finchden. . This case, then, being authority no longer, the foundation is destroyed of the proposition that even strangers, covenanting to annex a benefit to the land, may be held liable in the suit by the assignees of the tenant with whom the covenant was made. The doctrine, therefore, advanced by the learned annotator of *Spencer's* case, that even strangers may be bound by covenants benefiting the land, is unsound."

The editor of the ninth American edition of Smith's Leading Cases (vol. 1, 211) takes a different view of this question from the one taken in the earlier editions. He says:

" It seems that there must be between covenantor and covenantee the relation of grantor and grantee, which is all that there is between the grantee and his assignee. It is not thought that a covenant of warranty made by a stranger to the land would run with it, and perhaps the relation necessary to exist is that which would have constituted privity of estate at common law before the statute of *Quia Emptores*, although

the rent or services reserved which were, perhaps, an incident of the old privity, are not now usual. On the authority of *Packenham's* case, sometimes called the *Prior's* case, stated in the text, the English editor lays it down broadly that the covenantor may be a stranger to the land, but that case stands by itself, and it may well be doubted if, at the present day, a covenant to warrant the title, or to keep buildings in repair (for instance), made by a stranger to the land, would be held to run. It is possible that some explanation of that case might be found in the religious nature of the service and the connection of the convent and the manor. If it should be followed to the extent suggested by the English editor, it would be a startling exception to the otherwise universal rule that there must be some land or interest in land pass in connection with the covenant."

Covenants annexed to estates in privity, or covenants running with the land, are incidents to the estate. Coke, when at the bar, successfully took the position (*Noke* v. *Awder*, Cro. Eliz. 373) that if A had no estate in land and assumed to convey it with covenants for title to B, who assumed to convey it with like covenants to C, that C being evicted by a title paramount to A's pretended title, could not recover against A on his covenant, because he having no estate, title or interest in the land, nothing passed to B to which the covenants could attach as incidents. This doctrine led to the logical conclusion that when a grantee lost his land and needed the aid of his covenants for title, that they became worthless. Much that has been written about the liability of strangers to title being liable on their covenants of warranty has been in refutation of the doctrine of the case last cited. It is hardly necessary to say that this doctrine has long been exploded, and is but remotely, if at all, connected with the question which lies at the root of this case.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BRADLEY, J. (dissenting). The question whether the defendant's covenant ran with the land, or whether he was capable

of making a covenant having that effect, was not specifically raised by any exception taken at the trial, or to any finding or refusal to find of the trial court.  The court found that Almira S. Coe and the defendant, her husband, made a deed of the lands described in the complaint purporting to convey them in fee simple to Nancy Fisher, and " that said deed contained covenants of seizin, right to convey, against incumbrances, quiet enjoyment, further assurances and warranty, which covenants were made by the defendant and Almira S. Coe jointly." No exception was taken to this finding.  As conclusion of law the court found that the covenants were broken, and that the plaintiffs were entitled to recover against the defendant the amount there mentioned.  To this conclusion the defendant excepted.  And he requested the court to find that " Almira S. Coe and the defendant made, executed and delivered to Nancy Fisher a deed conveying the premises described in the complaint, which deed contained covenants of warranty, seizin and quiet enjoyment."  The court so found.  This was the only request to find having relation to the character of the defendant's covenant.  And the defendant's request that the court find as conclusion of law that the complaint be dismissed was refused, and exception taken.  Those were the only exceptions taken by the defendant.  It is true the court found that Roberts conveyed the premises to Almira S. Coe, and that she then entered into the occupancy and continued in it until the conveyance to Nancy Fisher, who then went into possession. And it appeared as evidence that the deed made by the defendant and his wife contained the covenant made by them, that the wife was lawfully seized of a good, absolute and indefeasible estate of inheritance in fee simple of the premises, also the usual covenants of quiet enjoyment, further assurances and of warranty.  But the court did not specifically find, nor was it requested to find, that the defendant had no interest in the premises at the time of the conveyance, nor was any motion to dismiss the complaint made at the trial on that or any ground. Facts not found, and which the court was not requested to find, are not entitled to consideration in this court for the

purpose of reversing the judgment. (*Burnap* v. *National Bank*, 96 N. Y. 125.)

The possession of the premises was delivered to and taken by the grantee pursuant to the deed of conveyance in question. This was sufficient estate to carry the covenants of warranty as an incident to the land to the assignee of the grantee, and on his behalf to support an action upon such covenant upon being evicted by title paramount. (*Beddoe's Exr.* v. *Wadsworth*, 21 Wend. 120; *Fowler* v. *Poling*, 6 Barb. 168; *Slater* v. *Rawson*, 6 Metc. 439; *Wead* v. *Larkin*, 54 Ill. 489; 5 Am. R. 149.)

But treating as found the fact that the covenant of seizin in the deed was that it was in the defendant's wife, the question arises whether the defendant's covenant of quiet enjoyment, etc., ran with the land. He was a grantor named in the deed, and the covenants were made by him and his wife jointly; and the grantee took by the conveyance an estate in the land. One of the recognized differences between a covenant which is and which is not available to the assigns of a grantee in a deed of conveyance is that the former relates to the estate, is made for its benefit and tends to enhance its value, while the other is collateral to it and does not pass beyond the covenantee. (Shep. Touch. 161, 176.) The former in case of grant in fee does not rest upon privity of estate with the covenantor, but privity, so far as essential for the transmission of the covenant from the covenantee, is with the latter. (*Norcross* v. *James*, 140 Mass. 188, 189; *Norman* v. *Wells*, 17 Wend. 136, 150, 151; Pollock's Law of Contracts [5th ed.] 226; 2 Chitty on Contracts [11th Am. ed.] 1383, 1388; Holmes on Common Law, 404.) And upon the proposition that a covenant intended to benefit the land made to the owner by a stranger to the title may become attached to and go with the land and be available to a subsequent owner of it, the *Pakenham Case* (Y. B. 42 Edw. III, 3) has frequently been referred to and cited by elementary and judicial writers. There the Prior with the consent of his convent, for himself and his successors, by deed covenanted with the owner that he and his

convent would sing, etc., in such owner's chapel on the manor. It was held that this covenant was annexed to and passed with the land of which the chapel was a part.    The doctrine of that case has been questioned by Sugden and Washburn, but the view of the former, as represented by his later editions, is that the doctrine of privity of estate is not applicable to covenants entered into by a vendor.    (Sugd. on Vend. [14th ed.] c. 15, § 1, pl. 14 *et seq.*)    And it may be observed that the *Prior's* case has quite generally been cited and its principle stated with apparent approval in England and in this country.    (Shep. Touch. 176; Coke Lit. 385a; Bacon Abr., Covenant E.; *Spencer's Case*, 5 Coke, 16; Smith's Leading Cases, 22, 26; *Vyvyan* v. *Arthur*, 1 Barn. & C. 410, 415; *Norman* v. *Wells*, 17 Wend. 136, 151; *Allen* v. *Culver*, 3 Denio, 284, 289, 301; *Dickinson* v. *Hoomes*, 8 Gratt. 353, 403; *Van Rensselaer* v. *Read*, 26 N. Y. 574; *Norcross* v. *James*, 140 Mass. 190; Holme's Com. Law, 395; Hamilton on Cov. 96.)

In *Keppell* v. *Bailey* (2 Myl. & K. 517), the doctrine of the *Prior* and *Convent* case had no necessary application to the question presented and determined.    It was there held that a covenant made by the proprietors of an iron-works property to transport material for their works from a certain mine over an adjacent railroad was a personal covenant merely, and did not pass by the sale of the iron-works so as to charge the vendee with the obligation to perform.    There was no relation of lessor and lessee between the parties, nor was there any connection between their estates.    And to permit the covenant to run with the land and the burden of it to fall upon the vendee of the covenantor, privity of estate, which did not exist between them, was essential.

And such was the case of *Hurd* v. *Curtis* (19 Pick. 459), where Mr. Justice WILDE, in delivering the opinion of the court, said: "There is no exception to the rule that no covenant will run with the land so as to *bind the assignee* to perform it unless there were a privity of estate between the covenantor and covenantee."    Such was also the case of *Cole* v. *Hughes* (54 N. Y. 444).    There is no opportunity to doubt

the essentiality of privity of estate between the original parties
to a covenant to carry the burden of covenantor to his assignee.
That was the principle upon which *Bally* v. *Wells* (3 Wilson,
25) was decided, and where *Spencer's* case was thoroughly
considered and its doctrine applied. Nor can the soundness
of the principle upon which *Webb* v. *Russell* (3 Durn. & E.
393) was determined be questioned. There the action was
upon the covenant in a lease against the assignee of the lessee
to recover rent and for failure to repair. The demurrer to the
declaration was sustained, because it appeared by it that the
reversion was not in the plaintiff. The privity of estate requi-
site to support an action against the assignee of the lessee is
only between the latter and the owner of the reversion. And
the covenant in that lease was effectual to support the later
action by the party having the reversion in *Stokes* v. *Russell*
(Id. 678); *Dolph* v. *White* (12 N. Y. 296). Those cases do
not necessarily have any application to the question in the
present one. They had relation to covenants as burdens, which
to run with the land must have the support of privity of estate
between the covenanting parties, and generally rest upon the
relation of landlord and tenant. There may occasionally have
been some confusion given by *dicta* indicating that contracts
which operate to create easements run with the land as
burdens. This is not strictly correct. The contracts so
operating are executed ones and create vested rights. A grant
is not a covenant, and a covenant that runs with land is execu-
tory. The rule that covenants run with the land as a burden
was founded upon or deduced from the feudal law, where the
relation of landlord and tenant existed. That rule is not
applicable to conveyances in fee of the entire estate of the
grantor. The covenants of warranty are purely a matter of
contract between the parties to the deed of conveyance con-
taining them, and being beneficial in their relation to the
estate, which the deed purports to convey, they become
annexed to it when it passes from the covenantee to his
assignee; and through the medium of the conveyance to the
latter, become available to him, in case of breach, while he

retains the relation of grantee to the land. (Bingham Real Estate, 429.) This is not founded upon privity of estate with the covenantor, and it rests upon privity of contract for the reason only that the conveyance by the covenantee operates as an assignment by him of the covenants of warranty taken by the latter from his covenantor. But the doctrine that such covenants pass with the estate from the covenantee is an exception to the general rule requiring privity of estate between covenantor and covenantee, and evidently was adopted upon commercial considerations deemed advantageous to the transmission of estates in fee, by giving the grantee the benefit of covenants of quiet enjoyment, contained in any of the conveyances in the line through which the grant to him may be traced. (Bingham Actions and Defenses, 401, 405, 406.) This character of such a covenant is recognized by the learned justice in *Hurd* v. *Curtis.* He says : " Covenants of title may be considered as an exception to the general rule, and the reason for the exception is very strong, for nothing can be more manifestly just than the party who loses his land by a defect of title should have the benefit of the covenants, which were intended to secure an indemnity for the loss. Such a covenant is dependent on the grant, is annexed to it, as part and parcel of the contract, and runs with the land in favor of the assigns of the grantee or covenantee." Then he proceeds to state, substantially, as before quoted, that to impose a burden upon the assignee the rule that there must be privity of estate between covenantor and covenantee is without exception. And the same distinction was observed by Judge Earl in *Cole* v. *Hughes*, in his statement there made, that " there is a wide difference between the transfer of the burden of a covenant running with the land, and of the benefit of the covenant. The benefit will pass with the land to which it is incident, but the burden or liability will be confined to the original covenantor, unless the relation of privity of estate or tenure exists or is created between the covenantor and covenantee at the time the covenant is made." This is undoubtedly the rule upon the subject. And since the statute of. *quia*

*emptores,* where it was applicable, and in this state after the act of 1787 (Chap. 36, 1 R. L. '70), concerning tenures, of which the provisions of sections 3 and 4 of 2 Revised Statutes, 718, are a substitute, a conveyance in fee of the entire estate of the grantor has not permitted a covenant between him and his grantee to run with the land as a burden to charge the assigns of the latter. The fact that covenants of warranty of the grantor in a deed of such a conveyance pass to the assigns of the grantee is an exception to the general rule requiring privity of estate with the covenantor. And this is because they are treated as attached to the land as a benefit and pass with it as an incident. The *Prior's* case has repeatedly received such judicial sanction in this state as to require some reason, which does not now occur to me, why, within its doctrine, a covenant, independent of the grant, made by a stranger to the title, to the owner of the land and intended for the benefit of his estate, and beneficial to it, may not as such become attached to and pass with it to a subsequent owner. This would not embrace all covenants beneficial to the estate, but only such as are *solely* for its benefit, and thus for the benefit of the owner *alone* in his relation to the lands. I do not pursue the consideration of that case, or seek by any reasoning to sustain or qualify it, because its authority is not deemed essential to the support of the view taken that the defendant's covenant in the present case passed with the estate in the land to the assigns of the covenantee. He was not a stranger to the terms of the grant, but he was one of the parties named as grantors in the deed by which the conveyance of the estate granted was made, and his covenants of warranty and further assurance were made jointly with his wife. His relation, so far as related to those covenants to the grantee, was no different, in any respect or for any purpose, than those of the wife, and they went with the estate to the assigns of the grantee. (*King* v. *Jones,* 5 Taunton, 418; *Dickinson* v. *Hoomes,* 8 Gratt. 353; *Colby* v. *Osgood,* 29 Barb. 339.) This, as before remarked, is not dependent upon privity of estate, for none exists between the covenantor and covenantee in a

conveyance in fee in the legal sense of the term, nor between the former and the assigns of the latter, but the benefits of the covenants of warranty, taken by the grantee in the instrument by which the grant is made, pass to his assigns as an incident to the estate. And in *Norman* v. *Wells* (17 Wend. 149, 150), Mr. Justice COWEN gives the reason why such covenants are available to an assignee in the remark : " Why do charters and covenants for assurance and warranty and the like follow the land ? Because they make part of its value." (2 Wash. R. P. [4th ed.] 286, 287.) And the learned justice in the case last cited approvingly refers to the fact that the court, in *Vyvyan* v. *Arthur*, proceeded upon the *Prior's* case (p. 151), and in commenting upon *Keppell* v. *Bailey* he does not adopt the *dictum* of the lord chancellor there in respect to that case. (Pp. 153–155.) It may be observed that what is usually stated in the books on the subject of privity of estate, has reference to the general rule applicable to the relation, arising out of leases between landlord and tenant, or one of them, and the assigns of the other, or between the assigns of both of them.

The right of action upon covenants in leases is dependent upon privity of estate existing between the owner of the reversion and the lessee or his assigns ; and the covenants of the lessee are for the benefit of the reversion, and go with it. They pass to his assignee as a burden. Notwithstanding that situation, it was held in *Allen* v. *Culver* (3 Denio, 284) that the grantee of the lessor of the reversion could maintain an action against the person who, by a separate instrument made at the same time as the lease, had become surety of the lessee for the payment of the rent. This could rest on the ground only that the covenant of the surety was, in practical effect, inseparable in point of liability with that of the lessee. There privity of estate was not only requisite, but the covenant of the surety was not united in the same instrument with that of the lessee, and by which the demise to him was made. That case, therefore, goes further than is necessary for the support of the liability of the defendant upon his covenants to the assignee of the covenantee. In the view taken of the case at

bar, that of *Nesbit* v. *Nesbit*, (1 Taylor [N. C.] 82), has no essential bearing upon the question here presented. There the parties, who made the deed poll, neither had nor pretended to have any estate in the land, but it appeared by it that they received the consideration in behalf of their daughter, who had the title, and on her behalf bargained and sold the premises, and covenanted that when she arrived at age she would execute further assurance, etc., and if she nulified the sale they would refund to the purchaser double the amount of the purchase-money paid by him, and pay him the damages sustained. She afterwards married, and her husband asserted the title of his wife and entered into possession of the premises which had been conveyed by such purchaser to another, who brought action upon the covenant against the executors of the covenantor. It was finally held that the action could not be supported, for the reason that it appeared upon the face of the declaration that the defendant's testator neither had nor pretended to have any title, and in support of the determination was cited *Noke* v. *Awder* (1 Croke's Eliz. 373), upon which no comment is needed.

In the *Nesbit* case it appeared by the deed that no estate could pass from the grantors to the grantee, which was essential to carry the covenant, and without which there was nothing to which it could be attached as an incident, or to furnish a medium of transmission of the covenant to the assignee. In the present case there was an estate in the land conveyed, and with it the covenants of warranty contained in the deed passed to the assigns of the covenantee. Those of the defendant, made jointly with the wife, no less than hers, were beneficial to the grant and to the estate granted, became an incident to the land and passed with the estate from the covenantee.

The further question, and the one mainly considered in the court below, is whether the defendant's covenant was available to the plaintiffs. They became mortgagees of Nancy Fisher while she occupied the premises under the grant from the defendant and his wife. Mrs. Fisher afterwards conveyed to Fuller, and he to Clara B. Leavitt, all of whom respectively

entered into possession under the several conveyances. While the action of ejectment against Leavitt, which resulted in her eviction by title paramount, was pending, the plaintiffs commenced their action to foreclose the mortgage made by Fisher, in which decree was obtained, pursuant to which the land was sold and purchased by the plaintiffs. They never acquired the possession, and, therefore, were not evicted, but before they obtained the deed of the sale upon the decree, the eviction of Mrs. Leavitt had been accomplished. For those reasons it is insisted, on the part of the defendant, that the plaintiffs took no right of action upon the covenant of warranty against the covenantor. This would be so if their rights as purchasers had relation in time to that when the sheriff's deed was made to them, because then there had been a breach of the covenant, and it had become a mere chose in action, and a conveyance by Leavitt then made would have been ineffectual to afford any remedy upon it by her grantee. But that was not the situation when the mortgage was made. The foreclosure and sale, in practical effect, eliminated the defeasance from the mortgage. The plaintiffs, as purchasers, took the estate which the mortgagor had at the time the mortgage was given, and to that time, and the situation in that respect as it then was, their rights derived from the sale had relation. (*Rector, etc., of Christ Church* v. *Mack*, 93 N. Y. 488; *Lewis* v. *Cook*, 13 Iredell [Law], 193; *White* v. *Whitney*, 3 Metc. 81.)

Mrs. Leavitt was a party defendant in the foreclosure action, and whatever estate or right, by way of equity of redemption, she had was cut off and barred and taken by the plaintiffs, who, as purchasers, became assignees of the interest she had acquired by her purchase of the premises. (*Howell* v. *Leavitt*, 90 N. Y. 238.) But for the mortgage and its foreclosure, her right as incident to the estate conveyed to her was, upon eviction, to seek indemnity by action upon any covenant running with the land to her. And this right of Mrs. Leavitt, annexed to the land as incident to the estate she had purchased, was, as such, taken by the purchasers upon the mortgage foreclosure, and they alone could maintain an action upon the covenant.

For the reasons already given, this did not embrace the covenants of her immediate grantor.   The consideration of the mortgage was $15,000.   That, and not the amount for which the judicial sale was made, was properly made basis of damages and recovery by the plaintiffs.   (*Greenvault* v. *Davis*, 4 Hill, 643.)

A different question in this respect may have been presented if a person other than the mortgagees had purchased the property on the foreclosure sale.

The court found that to be the actual amount loaned, and the payment of which the mortgage was made to secure was that sum.

The judgment should be affirmed.

All concur with Follett, Ch. J., except Bradley, Haight and Brown, JJ., dissenting.

Judgment reversed.