### COLBY *vs.* OSGOOD.

The right to further assurance, when stipulated for, passes to the successive grantees. It is a covenant that runs with the land, and as a consequence is assigned by a conveyance of the land.

Where a grantor conveys land with full covenants of seisin, warranty, right to convey free from incumbrances, and for further assurance; the covenants being made with the grantee, his "heirs and *assigns;*" and the grantee subsequently conveys the land to another, the latter may maintain an action, in his own name, against the grantor, for a breach of the covenant against incumbrances, in the existence of a mortgage which was a lien upon the premises at the time of the original conveyance.

A release of a mortgage is a "further assurance."

THIS action was brought for the recovery of $10,828 $\frac{65}{100}$, with interest from the 12th day of March, 1855, for a breach of the covenants contained in a deed of conveyance of a house and lot in the city of New York. The plaintiff derives title from the defendant, through Samuel Smith, who was the defendant's grantee, and the plaintiff's grantor, of the premises in question. The breach of covenant complained of consists in a mortgage given by the defendant, while owner of the premises, to one Edwin Snyder, and which remained an existing incumbrance upon the premises until after the conveyance to the plaintiff, who was compelled to remove it, in order to prevent a foreclosure and sale, by paying the amount claimed in this action. At the hearing before the referee, the defendant's counsel moved, *in limine,* to dismiss the complaint on two grounds: 1. That an assignee of a grantee of land cannot maintain an action in his own name for a breach of the covenant against incumbrances. 2. That the breach of covenant was insufficiently assigned in the complaint. The referee granted the motion on the first ground, and dismissed the complaint. The plaintiff excepted to the rulings and finding of the referee, and from the judgment entered upon the report of the referee, the plaintiff appealed to the general term.

*H. E. Smith,* for the appellant. I. The doctrine that has obtained in this state, and several states of the union, that

an assignee of a covenantee in a conveyance of real estate, cannot maintain an action in his own name for a breach of the covenants against incumbrances, of seisin, and right to convey, is founded solely upon the technical rule against the assignment of a *chose in action,* and not, as the referee supposes, from the want of privity of estate or contract. (1.) In all the adjudicated cases, and elementary treatises, the doctrine is placed upon the ground of the technical rule. (4 *Kent's Commentaries,* 471, 472, *5th ed. Rawle on Covenants for Title,* 344, 345, *2d ed. Greenby et al.* v. *Wilcocks,* 2 *John.* 1. *Fowler* v. *Poling,* 2 *Barb. S. C. R.* 300. *Sprague* v. *Baker,* 17 *Mass.* 586. *Clark* v. *Swift,* 3 *Metc.* 395.) (2.) Since the statute *quia emptores,* which abolished sub-infeudation, upon a conveyance in fee which leaves no reversion in the donor, there is, properly speaking, and can be, no *privity of estate* between the grantor and the assignee of the grantee. Before the statute, it was the *reversion, or possibility* of reverter, that created privity of estate; and since the statute, the *want* of reversion, or possibility of reverter, destroys that privity. (*Rawle on Covenants for Title,* 341, 2d ed. *Am. Notes to Spencer's case,* 1 *Smith's L. C.* 108, 109, 112. *Bingham & Colvin on Rents, Covenants, &c.* 240. *Townsend* v. *Morris,* 6 *Cowen,* 123. *De Peyster* v. *Michael,* 2 *Seld.* 467.) (3.) The ordinary covenants in a deed, though some of them are often denominated real covenants, are in fact all personal covenants, and consequently choses in action. The doctrine that any of these covenants run with the-land, is an exception to the old common law rule that choses in action are not assignable. The law now, for wise reasons, permits their transfer with the land, as incidents, when they are in their nature capable of running with it. What shall constitute a capacity for running with the land has been established somewhat arbitrarily, but firmly: it depends upon two conditions; first, the covenant must be about or affecting the land; and second, it must be for the

Colby *v.* Osgood.

benefit of the land. (*Am. Notes to Spencer's case*, 1 *Smith's L. C.* 135, 136, 99. *Rawle on Covenants for Title*, 340, 341, 342, 343, 2*d ed. Norman* v. *Wells*, 17 *Wend.* 136. *Allen* v. *Culver*, 3 *Denio*, 284. *Plymouth* v. *Carver*, 16 *Pick.* 183. *Taylor* v. *Owen*, 2 *Blackford's Ia. R.* 301. *Bingham & Colvin on Rents, Covenants*, &c. 65. *Vernon* v. *Smith*, 4 *Barn. & Ald.* 1. *Bally* v. *Wells*, 3 *Serg. Wils.* 25. *Vyvyan* v. *Arthur*, 1 *Barn. & Cress.* 410. *Hurd* v. *Curtis*, 19 *Pick.* 449. *Townsend* v. *Morris*, 6 *Cow.* 123. 4 *Kent's Com.* 472, note *a*, 5*th ed. Spencer's case*, 2*d*, 3*d and* 4*th resolutions*, 1 *Smith's L. C.* 23.) (4.) It is a settled doctrine, that on the question whether a particular covenant runs with the land, and passes to the assignee, it makes no difference whether the covenantor be the person who conveyed the land or a mere stranger. Between a stranger and an assignor there can of course, strictly speaking, be no privity of estate. The only privity that can, in such case, exist, is that which results from the capacity of the covenant to run with the land; and this capacity, since the statute *quia emptores*, as before shown, depends upon two conditions: first, that the covenant shall be about or affecting the land; and second, that it shall be for the benefit of the land. (*Packenham's case*, 42 *Edward III.*, 3, *cited in Spencer's case*, 1 *Smith's L. C.* 95. *Rawle on Covenants for Title*, 342, 2*d ed. Norman* v. *Wells*, 17 *Wend.* 150, 151. *Am. Notes to Spencer's case*, 1 *Smith's L. C.* 108.)

II. From the foregoing positions and authorities, it is difficult to perceive any sound reason for the rule that the covenant against incumbrances does not pass to the assignee. It is no more a personal covenant than all the covenants in a deed; and if it be a chose in action, so are all the rest since the statute *quia emptores*. The doctrine that any of them run with the land, so as to give a right of action to the assignee, is an exception to the common law rule against the assignment of choses in action. Within this exception, the covenant against incumbrances has all the conditions con-

ferring capacity to run with the land: it both concerns, and is for, the benefit of the land. (1.) The reason assigned for the rule is, that this, and the covenants of seisin, and right to convey, are covenants *in presenti*, and if not true, are broken as soon as made, and immediately become mere choses in action, incapable of assignment. But we have before seen that all the covenants in a deed are choses in action, whether broken or kept, and hence the reason assigned for the rule shows its absurdity. In *Greenby et al.* v. *Wilcocks*, (2 *John.* 6,) Livingston, J., in an able dissenting opinion, significantly says: "It might be asked, what makes a covenant more a chose in action after than before its breach?" (2.) A more specious reason for the rule would seem to be, that, as covenants pass, not by direct assignment, but as incident to the estate, in those cases where the breach is total, and the damage complete as soon as executed, if the covenant be untrue— as in covenants of seisin and right to convey—the covenant is severed from the estate, and becomes a mere personal right of action for the damages, which passes to the executor, and not to the heirs or assigns, with the land. But, if this were the reason by which the rule is vindicated, then a distinction should be made between cases where the damage is complete and accrues to the first grantee, and those in which, though there may be a mere technical breach to the first grantee, yet the real damage is sustained by the assignee. This distinction is made by the English courts, but it has been ignored by ours. (*Rawle on Covenants for Title*, 344, 345, 2d ed.) (3.) Our courts generally have adopted the rule in question with great reluctance, especially as applied to the covenant against incumbrances, and only in obedience to what has been supposed to be the strict technical common law rule, as laid down in *Lewis* v. *Ridge* (*Cro. Eliz.* 863.) That case has either been misunderstood this side of the Atlantic, or our courts present the anomaly of following an English decision which is repudiated by the English courts. Upon examination it will appear that the case of *Lewis* v. *Ridge* does not

Colby *v.* Osgood.

support the position based upon it, and is not in conflict with the more recent English decisions. The covenant was that the land "should be discharged, within two years, of all statutes, charges and incumbrances, excepting the estate for life:" breach, that the statute was extended. The covenant was to do a thing certain within a specified time, and execution had issued upon the statute; the land was actually extended; the covenant was, therefore, finally and as completely broken at the expiration of that time as it could be, and the damage was complete. (*Rawle on Covenants for Title*, 356, 357, 358, 2d ed.)

III. But whatever may be the rule and the reason for it, either in England or America, in courts of law, there has never been any difficulty about the matter in equity, where assignments of choses in action have always been held valid; and the common law courts, in modern times, have acted upon the same principle, and permitted the assignee to maintain an action in the name of the assignor. This doctrine, in its application, has embraced covenants that are said not to run with the land at common law—including the covenant against incumbrances—and treated the assignee of the land as the equitable assignee of the covenant, by virtue of the transfer of the land, without any direct or specific assignment of the covenant. (*Rawle on Covenants for Title*, 383, 384, 2d ed. 2 *Story's Eq. Jur.* §§ 1040, 1047. 1 *Parsons on Con.* 193, 2d ed. *Clark* v. *Swift*, 3 *Metc.* 395. *Sprague* v. *Baker*, 17 *Mass.* 586. *Thayer* v. *Clemence*, 22 *Pick.* 493. *Redwine* v. *Brown*, 10 *Georgia R.* 318. *Am. Notes to Spencer's case*, 1 *Smith's L. C.* 122. *Nesbit* v. *Brown*, 1 *Dev. Eq. R.* 30. *Thompson* v. *Rose*, 8 *Cow.* 266. *Alexander* v. *Schrieber*, 13 *Miss. R.* 271. *Chaplain* v. *Briscoe*, 11 *Smedes & Marsh.* 377. *Thornton* v. *Court*, 17 *Eng. Law and Eq. R.* 231. *Riddell* v. *Riddell*, 7 *Simons*, 529. *Murray* v. *Jayne*, 8 *Barb.* 612, 616.)

IV. The code of procedure blends the two systems of law and equity, and permits an action to be brought in the name

of the assignee, and thus removes the technical difficulty that has driven our courts of law into a series of decisions which they made with reluctance, and from a supposed necessity growing out of the rule against the assignment of choses in action. If, therefore, an assignee of the land who has suffered from the breach of covenant against incumbrances, be an equitable assignee of the covenant, or of the right of action for such breach, then this action is rightly brought in the name of the present plaintiff. (*Code of Procedure*, §§ 69, 111. *Rawle on Cov. for Title*, 383, 384, 2d ed.) (1.) The referee held that the action would be maintainable as an equity proceeding, if the pleadings were properly framed; and that it might be maintained in its present form, if the plaintiff had a specific and independent assignment of the right of action from Smith, his grantor. To this it may be replied: 1. That all the authorities which hold that the assignee of the land is the equitable assignee of the covenant, treat him as such assignee by virtue of the transfer of the land, and do not require a specific and independent assignment of the cause of action. 2. That if the assignee of the land could maintain an equity proceeding against a remote grantor, without a specific assignment of the cause of action, then it follows that the right of action passes with the land as an incident, and that the doctrine that an assignee cannot maintain an action in his own name in the common law courts, on a certain class of covenants, is founded upon the technical rule against assignments of choses in action, and not, as the referee holds, on the ground that there "is no privity of estate or of contract between the parties." 3. The equitable interest in a chose in action may be assigned by a mere delivery of the evidence of the contract. (1 *Parsons on Cont.* 197, 2d ed.) (2.) The rule that choses in action are not assignable at common law, now means only that they can be recovered in no other name than that of the original owner. This appears from the fact that courts will protect the rights of the assignee, on due notice of the assignment. It ought to follow, therefore, that

under the code choses in action are assignable, and the technical rule abrogated. (3.) An argument in favor of the technical rule, supposed to be established by *Lewis* v. *Ridge*, and followed by our courts, has been drawn from the nature of the covenant of seisin. As covenants which possess the capacity of running with the land do not pass by direct assignment, but as incident to the land to which they relate, it is said that in case of the covenant of seisin, when untrue, no land passes to the grantee and his assignee, and of course no covenant passes as an incident. If this be true of the covenant of seisin, it is equally true of the covenants for quiet enjoyment and of warranty, and ought, for the same reason, to destroy their capacity for running with the land. But it is not true of the covenant against incumbrances, for, although untrue when made, an estate passes to° the assignee. To meet this difficulty as to covenants of warranty, and for quiet enjoyment, it was held in *Beddoe's Executor* v. *Wadsworth*, (21 *Wend.* 120,) that a transfer of the possession is sufficient to pass these covenants to the grantee and his assignee. It was also held that covenants pass by release and quit-claim, as well as by bargain and sale, or lease and release.

V. The doctrine that the covenant against incumbrances does not run with the land, so as to give the assignee a right of action in his own name for the breach, where he has been the only sufferer, has been adopted with reluctance, and operates so inconveniently and unjustly, that courts ought to favor its abrogation. (1.) It is a well established rule, that in an action for a breach of this covenant, the plaintiff can recover only nominal damages, where he has not removed the incumbrance, nor been evicted. The covenant is treated as a covenant of indemnity, and until a party has actually sustained an injury, he is not entitled to recover damages. (*Rawle on Covenants for Title*, 155, 2d ed. *Baxter* v. *Ryerss*, 13 *Barb.* 267, 281. *Bemis* v. *Smith*, 10 *Metc.* 194.) Now, in the case at bar, if Smith, the defendant's grantee, had brought suit, he would have recovered just six cents damages, and been

mulcted in costs.   But he assigned to this plaintiff, who was
compelled to pay ten thousand dollars to remove the incum-
brance, and now it is said that Colby cannot recover of the
defendant without a specific assignment from Smith of his
six-penny right of action.   If it be said that Colby has his
action against Smith, it may be asked in reply, what if Smith
be hopelessly insolvent?   Moreover, why multiply actions
when the substantial rights of the parties can be disposed of
in this action?   (2.) Suppose Smith had brought his action,
and obtained a judgment for the technical breach of the cove-
nant, before paying off the incumbrance, and had afterwards
paid off the incumbrance, would he have had another action
for the damages sustained?   If yea, then it would tolerate
the practice of splitting a demand, and allow two actions
where one would answer all the purposes of justice.   If nay,
then the technical right of action, to which so much import-
ance is attached by the other side, is a right the exercise of
which would be visited by a forfeiture of the substantial rights
of the party.   (3.) If this plaintiff should now take a specific
assignment from Smith of his valuable chose in action—
which, it is said, in case of his death would pass to his execu-
tor—and bring an action upon it against this defendant, what
would he be entitled to recover?   Beyond doubt, he would
recover what was thus assigned him, namely, six cents, and
the privilege of paying costs; but on what principle he would
be entitled, in virtue of such assignment, to recover the ten
thousand dollars by him paid, does not very clearly appear.
(4.) Covenants were introduced originally to succeed the an-
cient warranty, which was strictly a covenant real, and could
never be taken advantage of by personal representatives.   It
has generally been supposed that their introduction "was in-
tended rather to extend the remedy—both by means of the
more pliable form of the action of covenant, and by giving
indemnity in the shape of damages—than to alter materially
the rights and relative positions of those who might seek to
take advantage of them."   But if the doctrine contended for

on the other side be carried out, their original purpose would be essentially and unfortunately perverted. (5.) In several states of the union the English rule obtains; in Maine the right of an assignee to maintain the action has been declared by statute; and some of the best elementary writers maintain the same doctrine, holding that the assignee—if he be the party actually damnified—may have an action, either in his own name, or in the name of the assignor. (*Rawle on Covenants for Title*, 350, 383, 384, 2d ed. 2 *Hilliard on Real Property*, 393, 57, 2d ed.)

VI. The breach of covenant is sufficiently assigned in the complaint, and so the referee found. The complaint sets out the several conveyances *in hæc verba*, alleges the incumbrance complained of, and the payment thereof by the plaintiff, in order to prevent his premises from being sold under the mortgage. In brief, all the facts necessary to maintain the action are set forth, and under the code this is all that is requisite; more than this would be vicious pleading. (*Code of Procedure*, § 142. *Clark* v. *Harwood*, 8 *Pr. R.* 472.)

*N. Dane Ellingwood*, for the defendant. I. The deed from the defendant to Smith contains a covenant against incumbrances, and no reservation in it was made of the mortgage in question. That covenant was consequently broken as soon as made and became from that time a mere right in action, upon which Smith alone could bring a suit. (1.) Smith might have assigned that right of action to one and conveyed the real estate to another; or (2.) Supposing that no assignment of it had been made, specifically, and Smith had died intestate, this right of action would have passed to his personal representatives and not to his heirs.

II. The deed executed by Smith, bearing date the 9th day of May, 1854, and delivered to the plaintiff, although it passed the estate in fee, did not pass to the plaintiff this right of action. A covenant broken does not run with the land. (*Rawle on Covenants*, 350.)

III. This rule of law is well established, and the present being an action at law, must be governed by it.

IV. No other rule could be allowed to prevail even in equity, under the circumstances of the present case. (1.) The plaintiff took a covenant against incumbrances, from Smith, in his deed bearing date the 9th day of May, 1854, and having constructive notice of the existence of the mortgage executed by Osgood, uncanceled of record, it is to be presumed that he relied upon that covenant. (2.) Osgood has an equitable defense as against Smith, which he could not have as against Colby. (*Rawle on Covenants*, 376. ·*Suydam* v. *Jones*, 10 *Wend.* 180.)

V. The plaintiff in this suit has no such interest in the broken covenant as to enable him to maintain an action upon it against the defendant.

*By the Court,* ROOSEVELT, J. In 1853—after the code went into operation—Osgood, the defendant, in consideration of $30,000, conveyed a certain house and lot, with the furniture, in 17th street, to one Smith, with full covenants of seisin, warranty, right to convey free from incumbrances, and for further assurance. The covenants, as usual, were made in terms, not only with Smith, but with "his heirs and *assigns.*" In the following year, to wit, in May, 1854, Smith, the grantee, for the same consideration and with the same covenants, conveyed the premises to Colby, the plaintiff in this suit. Osgood, it appears, before his sale to Smith, had mortgaged the lot to one Snyder, for $10,000, who, in December, 1854, commenced a foreclosure against Colby, and compelled him to pay the $10,000, besides a large amount in addition, for interest and costs, which Colby now seeks to compel Osgood to refund. Colby, it is conceded, has a remedy against Smith, and Smith against Osgood, for reimbursement. The question is, can Colby, passing by Smith, sue Osgood, Smith's grantor ; or must he sue Smith, and let Smith sue Osgood ?

The referee held that Osgood's covenant was broken the moment it was made; and that it was competent, under the code, to assign a broken covenant; but that in this case no such assignment had been made. In these views the referee, we think, partially erred.

*First.* The answer itself alleges that, simultaneously with the execution of the first deed, a sealed agreement was entered into, which recognized the mortgage, and qualified the effect of its existence as an immediate incumbrance, by allowing it to remain, by consent, unpaid till the 1st of November, 1854. There was therefore no breach in that respect of the covenants, or either of them, until after Smith's conveyance to Colby.

*Second.* The complaint sets forth the whole deed of the defendant, *verbatim,* including the covenant for further assurance. It therefore lays the foundation of a claim for a release of the mortgage, or payment of its equivalent in damages. A release of a mortgage is a "further assurance;" and the right to further assurance, when stipulated for, passes to the successive grantees. In other words, it is a covenant that "runs with the land," and as a consequence is assigned by a conveyance of the land. It may be that in this view of the cause of action, a demand should first have been made. No objection, however, was taken, in the answer, or on the argument, for the want of such demand. The defense was placed on the single position that the *plaintiff* had no right to make any demand, whether before suit or by suit; that the cause of action had never been assigned to him, but belonged, still, to the original covenantee; that the conveyance to him, by the covenantee of the lands, did not pass the right of action on the covenants, which, it was assumed, had been previously broken. The covenant for further assurance appears to have been overlooked. *That* clearly had not been broken before the conveyance. In its nature it was prospective; and although, in its legal effect, it might, in the present case, give to the party injured the same amount of damages as the covenant against

incumbrances, it still was not the same covenant. (4 *Kent*, 473.) It ran with the land, even if the other covenant did not; and it carried the other covenant with it.

On both grounds, the dismissal of the complaint was erroneous, and the judgment should be reversed, and a new trial ordered; costs to abide the event.

Ordered accordingly.

[NEW YORK GENERAL TERM, May 2, 1859. *Roosevelt*, *Pratt* and *Clerke*, Justices.]

---

ANDREWS, administrator of Blanchard, *vs.* WALLACE, administrator of Fairchild.

Where a claim against an estate is disputed by the executor or administrator, the surrogate has no jurisdiction to try the validity of such claim, on the petition of the creditor.

A decision made by the supreme court, at a general term, held in one of the districts, should be respected by the courts in other districts; unless in some special case, and for special reasons, a court feels compelled to depart therefrom. Per INGRAHAM, J.

And two successive decisions, concurring on the same point, made at general terms in different districts, should be treated as authority, in other districts, until reversed by a higher tribunal. Per INGRAHAM, J.

APPEAL from an order made by the surrogate of New York, upon the petition of Gardner P. Andrews, administrator of Blanchard, allowing the claim of the petitioner against the estate of Fairchild, deceased.

*By the Court*, INGRAHAM, J. The question submitted to us on this appeal is whether the surrogate has jurisdiction, on the petition of a creditor, to try the validity of his claim, when disputed by the executor or administrator. The surrogate in this case assumed to do so, and decided against the administrator, who now appeals to this court. It must be conceded that there is no express authority in the statutes authorizing such