ALMA WERNER, Plaintiff, v. MABEL KEMP WHEELER, Defendant.

First Department, January 6, 1911.

Deed — covenant of quiet enjoyment — when no breach — covenant of seizin and breach thereof — measure of damages — expenses of procuring evidence of grantee's title — decedent's estate — proof of title through devisee — covenant of further assurance — expense of further conveyances.

There is no breach of covenant of quiet enjoyment or of warranty where the grantee retains possession and there has been no attempt to evict him.

A covenant of seizin is a covenant *in præsenti*, and is broken if good title in fee simple absolute and right of possession are not in the grantor at the time of the delivery of the conveyance.

Where the grantee under a warranty deed acquires an outstanding title instead of electing to recover the purchase money, with interest, the amount necessarily paid by him in acquiring the other title is usually the measure of his recovery for the breach of the warranty.

But where the grantee, instead of being obliged to purchase an outstanding title, merely accepted voluntary quitclaim deeds from persons having a possible interest in the land so as to have a perfect title before suing her grantor for breach of warranty and shows no prior damages by loss of a sale of the premises or otherwise, she can recover only nominal damages for the breach of covenant of seizin. She cannot, having accepted such quitclaim deeds, recover of her grantor the expenses incurred not in obtaining a further title but mere evidence showing that she obtained a good title.

Under a covenant of seizin an outstanding title may be purchased at the expense of the covenantor, but not mere evidence of existing title in the covenantee.

*It seems*, that in the absence of evidence by the production of a will or otherwise there is no presumption that a will was duly executed or that devises therein are valid. Hence, it is incumbent upon one claiming title through a devisee as against the heir to establish not only the due execution of the will, which is presumptively shown by its probate, if probated here, but also the validity of the devise. Probate, however, is not essential to vest title in the devisee.

A covenant of further assurance does not obligate a grantor to obtain evidence of the grantee's record title, being merely an agreement to make any further conveyances necessary to vest in the covenantee the title intended to be conveyed. It relates to an interest which could have been, but was not, conveyed by the deed containing the covenant and it is broken only by refusal or omission to convey after a proper definite demand.

Under the Real Property Law (§ 253, subd. 4) the expenses of complying with the covenant for further assurance must be borne by the covenantee.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

*Jacob B. Engel*, for the plaintiff.

*Charles M. Bleecker*, for the defendant.

LAUGHLIN, J. :

On the 15th day of November, 1906, the defendant conveyed to plaintiff certain premises in the borough of Manhattan, New York, described in the submission, by a deed containing covenants of seizin, of quiet enjoyment, of warranty, of freedom from incumbrances except as stated, and that the grantor "will execute or procure any further necessary assurance of the title to said premises." Plaintiff thereupon went into possession under the conveyance and on the twenty-third day of the same month contracted to convey the premises to one Cohn with a full covenant warranty deed subject only to a mortgage for $8,500. Cohn refused to take title on the ground that defendant was not seized of the title in fee simple at the time she conveyed to plaintiff, and that the record title was then in one William Mackenzie. On the 2d day of December, 1873, William Mackenzie, who had formerly resided in the city and county of New York, but who then resided in the city of Manchester, England, executed a power of attorney to one William Matthews, who resided in Flatbush, Kings county, N. Y., by which, among other things, he expressly authorized his attorney to collect, sue for, recover and receive any moneys then due or that might thereafter grow due to him for principal and interest on bonds and on mortgages or other security, and on payment to execute satisfaction pieces or assignments, and with the usual power to do any and all things necessary in the premises. It appears that Mackenzie, in 1895, held a mortgage on the premises in question, and, by Louis Hurst, his attorney of record, brought an action in the Supreme Court in the county of New York to foreclose the mortgage. On the sale the premises were struck off to his attorney of record for the sum of $12,000. The attorney assigned the bid to Matthews as attorney in fact for Mackenzie, and the referee's deed was executed in form to Matthews *as attorney in fact for said Mackenzie* on the 19th day of March, 1896. It is stipulated in the submission that this deed conveyed the fee of the premises. The controversy arises, in part, over the question as to whether the conveyance vested the title in Matthews, individually, or in Mackenzie. On

the same day Matthews, as *attorney in fact* for said Mackenzie, executed and acknowledged a conveyance of the premises to one Martha Kemp, who took possession thereunder. The title which she thus received was conveyed by her executor to the defendant on the 29th day of October, 1900, and the defendant took possession thereunder and retained the same until she delivered possession to the plaintiff as already stated. The certificate of acknowledgment to the conveyance by Matthews as attorney in fact sets forth that the conveyance was executed by virtue of said power of attorney, which was duly recorded in the office of the register of deeds in the county of New York on the 30th day of December, 1873, to which record reference was made. Cohn refused to take title from the plaintiff on the ground that the record title remained in Mackenzie. This objection was evidently made on the theory that the power of attorney was not sufficiently broad to authorize the execution of a conveyance of real estate, and it is not seriously contended that it was. The plaintiff drew the attention of the defendant to these objections to her title and demanded a proper conveyance by which any outstanding claims or interest in Mackenzie or in his heirs or devisees might be conveyed. Meantime, and on the 5th day of October, 1897, Mackenzie died in England, leaving a last will and testament in and by which he devised all of his property to his heirs at law, and his will was duly probated in the principal probate registery of Her Majesty's High Court of Justice in England. One of the heirs, William Mackenzie, the younger, also died on or about the 17th day of December, 1898, leaving a widow, Jessie Mackenzie, and several children his heirs at law. On said demand being made the defendant procured and delivered to the plaintiff an unrecorded quitclaim deed to the premises bearing date the 30th of January, 1899, duly executed and acknowledged as required for record here by all of the heirs of William Mackenzie, the elder, except the one who had died, and by their wives, and by the widow of the deceased William Mackenzie, the younger. This deed recites the foreclosure of the mortgage and the assignment of the bid to the attorney in fact and the conveyance by him as such, and that he duly accounted to his principal for a cash payment received on the sale and conveyance of the premises, and for a mortgage given as security for the balance, and that Mackenzie ratified all of the pro-

ceedings of his attorney in fact; that on the 5th day of October, 1897, Mackenzie died a widower, leaving as his only heirs at law those who joined in the quitclaim deed and his son William, who was a citizen of the United States, and leaving a last will and testament, which was duly probated as already stated, by which he devised and bequeathed all of his real estate to his heirs at law; that his son William Mackenzie thereafter in 1898 died, leaving a last will and testament by which he devised and bequeathed all of his estate to his wife, who joined in the quitclaim deed.

The will of William Mackenzie, the younger, was not produced nor were its whereabouts or contents known to either party to this submission, other than as recited in the quitclaim deed, at the time the quitclaim deed was delivered, and when the plaintiff contracted to convey the premises to Cohn said will had not been probated or offered for probate.

The plaintiff employed counsel to find and obtain a certified copy of the will of Mackenzie, the elder, and to find the will of Mackenzie, the younger. The efforts were successful, for it was found and duly probated by the Surrogate's Court of Kings county as a will of both real and personal property, and its effect is as recited in the quitclaim deed. In these matters disbursements aggregating $150 were incurred, and it is conceded that the reasonable value of the services performed by counsel for the plaintiff was the sum of $800. The plaintiff demands judgment for $950, the aggregate of these two items, and the defendant demands judgment against the plaintiff on the merits.

The record presents two principal questions which require decision, viz.: (1) Whether the referee's deed on foreclosure vested good title in Matthews individually; and (2) whether, if a deed from Mackenzie or his heirs or devisees was required to perfect the title, plaintiff is entitled to recover the costs and expenses incurred by her in obtaining evidence as to the execution, validity and recording of the Mackenzie wills.

*First.* The recitals in the quitclaim deed to the effect that Matthews as attorney in fact duly accounted to his principal; that part of the consideration on the conveyance of the premises by him as attorney in fact was received in cash, and that a bond and mortgage were taken for the balance and accepted by the principal, are not

stipulated as facts for the purposes of the submission, and the sub-mission contains no statement on these subjects. It does not appear from the submission whether Matthews as attorney in fact, acting under the power of attorney, employed the attorney to foreclose the mortgage, or whether Matthews had charge of that particular mort-gage by virtue of his power of attorney, or otherwise, or whether on the assignment of the bid to him as attorney in fact the indebtedness secured by the mortgage was paid, or whether the deed was taken as a substitute for the security, which would be the effect of the proceedings if the mortgage was not paid. It may well be that if Matthews, through the attorney of record, bid in this property for the protection of his principal on the foreclosure of the mortgage and afterwards took title as attorney in fact for his principal, the deed would be deemed a mere substitute for the security and, therefore, personalty in his hands, and that he would be authorized to sell and convey the premises the same as he was authorized, by assignment or otherwise, to collect the mortgage and in that view the title would doubtless have vested in him individually. (*Lock-man* v. *Reilly*, 95 N. Y. 64; *Haberman* v. *Baker*, 128 id. 253.) In *Lockman* v. *Reilly* (*supra*) and *Haberman* v. *Baker* (*supra*) it was held that land purchased by executors on a foreclosure of a mortgage belonging to the estate is regarded as personal property in their hands, and that whether they take title individually or in their names as executors of the estate, and hold the title in a sense as trustees, for they are accountable to the estate therefor, they may individually convey good title, on the theory that the land is regarded as a substitute for the mortgage and that, therefore, the heirs take no title or interest in the premises. If we were permitted to draw *inferences* from facts stated on a submission, I think it would be a reasonable inference that title was taken by the attorney in fact for the reason that the entire amount due on the mortgage could not be obtained on the foreclosure sale and that, therefore, the deed became a substitute for the mortgage; but a submission is only authorized for the decision of questions of law, and on a sub-mission the court is confined to the *facts stated* and is not permitted to find other facts by inference. (*Marx* v. *Brogan*, 188 N. Y. 431, 433), and, therefore, the case cannot be decided on that theory.

It is further contended that the words in the deed " as attorney

in fact for Wm. Mackenzie" following the name of the attorney in fact, are mere *descriptio personœ*, and that, therefore, the conveyance was to Matthews individually. The conveyance runs to the "party of the second part his heirs and assigns, to his and their only proper use, benefit and behoof forever," and if the word "as" had not been used, and it did not appear by the recorded power of attorney that Matthews was the attorney in fact for Mackenzie for certain purposes, then doubtless the words "attorney in fact for Wm. Mackenzie" following Matthews' name would be regarded as mere *descriptio personœ* and title would be deemed vested in Matthews in his individual capacity. (*Greenwood Lake & P. J. R. R. Co.* v. *N. Y. & G. L. R. R. Co.*, 134 N. Y. 435; *Kanenbley* v. *Volkenberg*, 70 App. Div. 97; *Towar* v. *Hale*, 46 Barb. 361; *United States Trust Co.* v. *Stanton*, 76 Hun, 32; *Title Guarantee & Trust Co.* v. *Fallon*, 101 App. Div. 187; *Pfeiffer* v. *Rheinfrank*, 2 id. 574.) The use of the word "as" and the nature of the capacity in which it is recited in the conveyance that the grantee took title, in view of the fact that there was a power of attorney from Mackenzie to him on record to which he referred in conveying as attorney in fact, thus showing that he was assuming to act under it, preclude any inference that title was intended to be taken either in Matthews' name or in his right, individually, and clearly show that it was intended to vest title in him in a representative capacity and that he took nothing for himself. (*People* v. *Stock Brokers' Building Co.*, 49 Hun, 349; affd., on opinion of General Term, 112 N. Y. 670; *Greenwood Lake & P. J. R. R. Co.* v. *N. Y. & G. L. R. R. Co.*, *supra; Seventh Ward Nat. Bank* v. *N. Y. El. R. R. Co.*, 53 N. Y. Super. Ct. 412. See, also, *Stilwell* v. *Carpenter*, 62 N. Y. 639; *Leonard* v. *Pierce*, 182 id. 431; *Boyd* v. *U. S. Mortgage & Trust Co.*, 187 id. 262, 270.) There are authorities which hold that where a conveyance is made in trust and the trust is not specified, a valid express trust will be presumed, and a conveyance by the trustee will pass good title, upon the theory that it will not be presumed that such conveyance was in derogation of the trust. (*People* v. *Stock Brokers' Building Co.*, *supra; King* v. *Townshend*, 141 N. Y. 358, 364.) In the case at bar, however, if a trust was intended its terms are not stated in the deed, nor does the deed contain any reference thereto by which

the validity of the trust or the right of the trustee to convey, which depends upon whether it is in derogation of the trust (1 R. S. 730, § 65, as amd. by Laws of 1895, chap. 886; revised by Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 85, as amd. by Laws of 1897, chap. 136; now Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 105; Fowler Real Prop. [3d ed.] 483), may be determined; and in view of the rule applicable to submissions, I do not suppose that the court may indulge in any inferences with respect thereto, but is confined to the facts plainly stated. If, however, we are at liberty to speculate concerning the purpose for which the conveyance was made to the attorney in fact, which I think we are not, I am of opinion that in view of his designation as attorney in fact and of his limited authority under the power of attorney, the conveyance must be deemed to have been made to him to hold the premises in trust, not for the performance of an express trust authorized by law, but merely for the use of, and as agent for Mackenzie, and that not being a trust authorized by law (1 R. S. 728, § 55, as amd. by Laws of 1830, chap. 320, § 10; revised by Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 76; now Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 96), is deemed a passive trust, and the title at once vested in Mackenzie by virtue of the statute. (1 R. S. 728, §§ 49, 50; revised by Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 73; now Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 93; *La Grange* v. *L'Amoureux*, 1 Barb. Ch. 18; *Gueutal* v. *Gueutal*, 113 App. Div. 310; *Wendt* v. *Walsh*, 164 N. Y. 154; *People* v. *Stock Brokers' Building Co., supra.* See, also, *Matter of Gawne*, 82 App. Div. 374; affd., 176 N. Y. 597; *Matter of De Rycke*, 99 App. Div. 596; *Murray* v. *Miller*, 178 N. Y. 316.) This rule, of course, does not obtain where the grantee is personally interested (*King* v. *Townshend, supra*), which, however, is not the case here, or where the *cestui que trust* is incompetent to take or cannot be identified, for then the grant is void. (*Murray* v. *Miller, supra.*) Since it is not stipulated and we may not infer that the consideration was paid by Mackenzie, the case does not fall within the provisions of the Revised Statutes (1 R. S. 728, §§ 51-53), which were revised into section 74 of the Real Property Law of 1896, and are now in

section 94 of the present Real Property Law, and which declare that a grant to one person where the consideration is paid by another vests title in the grantee except in two instances therein specified.

If title was in Matthews individually, perhaps the covenants, although made as attorney in fact for Mackenzie, passed his individual title by estoppel (Gerard Titles [5th ed.], 566; *Tefft* v. *Munson*, 57 N. Y. 97; *Crane* v. *Turner*, 67 id. 437); and yet that is not free from doubt, since a judgment in a representative capacity does not bind one individually. (*Leonard* v. *Pierce, supra.* See, also, *Mutual Life Ins. Co.* v. *Shipman*, 119 N. Y. 324.) The conveyance from Matthews was in his name as attorney in fact for Mackenzie instead of in the proper form of a conveyance by an attorney in fact, which is in the name of his principal by him as attorney in fact (Gerard Titles [5th ed.], 367); but inasmuch as the power of attorney contains no grant of authority to convey, it is unnecessary to decide whether the conveyance, if it had been authorized by the power of attorney, would be sufficient to vest title in the grantee.

I am of opinion, therefore, that it cannot be held on this record that the title vested in Matthews individually and passed by his conveyance as attorney in fact.

*Second.* Even though the deed from the attorney in fact did not convey good title, I am of opinion that plaintiff cannot recover. The grantee has remained in possession and has not asserted a right to rescission, and does not seek to recover back the consideration paid. She affirms the purchase of the premises, and the question is whether there has been a breach of a covenant and whether the damages sought to be sustained are recoverable therefor. The grantee having taken and retained possession and there having been no attempted eviction, there can, of course, be no breach of the covenants of quiet enjoyment or of warranty. (*Clarke* v. *Priest*, 21 App. Div. 174, 179; Gerard Titles [5th ed.], 568; 8 Am. & Eng. Ency. of Law [2d ed.], 97, 98, 99, 103, 110, 219, 221.) Manifestly there has been no breach of the covenant against incumbrances. The only covenants, then, which require special consideration are those with respect to seizin and for further assurance.

A covenant of seizin is a covenant *in præsenti,* and is broken if good title in fee simple absolute and right of possession are not in the grantor at the time of the delivery of the conveyance. (*Mygatt*

v. *Coe*, 124 N. Y. 212; 11 Cyc. 1107; Laws of 1890, chap. 475, § 1, subd. 1; revised by Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 218, subd. 1; now Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 253, subd. 1.) Where the grantee does not elect to recover the purchase money and interest, and there is an outstanding title, which he acquires, the amount necessarily paid by him in acquiring it is usually the measure of the recovery. (8 Am. & Eng. Ency. of Law [2d ed.], 187; 11 Cyc. 1158, 1159, 1161, 1162, 1180; *Sanders* v. *Wagner*, 32 N. J. Eq. 506; *Thomas* v. *Clement*, 11 Rob. [La.] 397; *Pate* v. *Mitchell*, 23 Ark. 590.) But here the grantee purchased no outstanding title, and the action was not brought until after acceptance by the grantee of the quitclaim deed, which vested good title in her, and she shows no prior damages by loss of a sale of the premises or otherwise; and, therefore, I think that only nominal damages could be recovered for the breach of the covenant of seizin. (*M'Carty* v. *Leggett*, 3 Hill, 134; Suth. Dam. [3d ed.] § 597.) That is the general rule where the outstanding title has been purchased by the covenantor and taken in his own name before eviction, in which case the title so acquired inures to the benefit of the covenantee. (*Burr* v. *Todd*, 41 Penn. St. 206; *Tefft* v. *Munson*, *supra*; 8 Am. & Eng. Ency. of Law [2d ed.], 194.) But such nominal damages are not asked by the submission. Plaintiff was not obliged to accept the quitclaim deed, either with or without the production of or proof of the wills; and she could have stood on the breach of the covenant of seizin, which entitled her to recover the purchase money and interest if there was a complete failure of title (*Staats* v. *Executors of Ten Eyck*, 3 Caines, 111), but since she elected to affirm the sale she could perhaps, if she had not accepted the deed and possibly after accepting it, have made a *prima facie* case by the record and have left it to defendant to show the subsequently acquired title and to produce the wills as evidence thereof in mitigation of damages provided the covenantee were willing to accept title at that time. (*Resser* v. *Carney*, 52 Minn. 397; *Tucker* v. *Clarke*, 2 Sandf. Ch. 96; *Woolley* v. *Newcombe*, 87 N. Y. 605.) Plaintiff having accepted the quitclaim deed, however, the case is the same, I think, as if she had accepted such deed originally without requiring evidence as to the wills and

thereafter demanded such evidence and on the refusal or neglect of the covenantor to produce it, obtained it herself and then brought the action. If the quitclaim deed had been delivered to and accepted by plaintiff *originally* there would have been no breach of the covenant of seizin, for she thereby in fact obtained good title, but she would then have been, as she was later on after accepting the deed, without the proper evidence to show her title. She does not seek to recover the cost of obtaining further *title* but the *expenses* incurred in obtaining *evidence* of her title. She has herself obtained the *evidence* to show that she obtained good title and she has thereby relieved defendant of any obligation she might have been under of showing, in an action for breach of covenant, the due execution and contents of the wills upon which the title conveyed by the quitclaim deed depended. Under the covenant of seizin an outstanding *title* may be purchased at the expense of the covenantor, but not mere *evidence* of existing title in the covenantee. Of course, assuming that title vested in Mackenzie, an action for the specific performance of a contract to take title to the premises would not lie without the production of the evidence with respect to the Mackenzie wills showing that they were executed in due form and that the devises of the real estate therein were valid, and by probate or otherwise that they had become matters of record, for if a will be not probated within four years a *bona fide* purchaser gets good title from the heir (Code Civ. Proc. § 2628;* *Thorn* v. *Sheil,* 15 Abb. Pr. [N. S.] 81; *Norris* v. *Norris,* 63 How. Pr. 319), and in the absence of evidence, by the production of a will or otherwise, there is no presumption that the will was duly executed or that the devises thereunder are valid, and, therefore, it is incumbent upon one claiming title by devise, as against the heir, to establish not only the due execution of the will, which is presumptively shown by its probate, if probated here, but also the validity of the devise. (Code Civ. Proc. §§ 2611, 2627;† *Dworsky* v. *Arndtstein,* 29 App. Div. 274; *Matter of Merriam,* 136 N. Y. 58; *Ledwith* v. *Claffey,* 18 App. Div. 115, 117; *Matter of Law,* 56 id. 454; *Carr* v. *Anderson,* 6

* Revised by Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 46.— [REP.

† See Decedent Estate Law, §§ 23-25; Laws of 1910, chap. 578, §§ 2, 5; Code Civ. Proc. § 2625, as amd. by Laws of 1910, chap 578, § 1.— [REP.

id. 6; *Matter of Gaines*, 84 Hun, 520; affd., 154 N. Y. 747; Gerard Titles [5th ed.], 371.) The probate, however, of the will is not essential to vest title in the devisee (*Corley* v. *McElmeel*, 149 N. Y. 228), and it is not claimed that it was, and here the grantee was in possession and had accepted the quitclaim deed, which concededly gave her good title. The only possible theory, therefore, on which there can be any right of action on the facts stated in the submission is for a breach of the covenant for further assurance. That covenant did not obligate the defendant to obtain the *evidence* of the plaintiff's record title in question. Such a covenant is in the nature of an agreement to convey in the future, and it obligates the covenantor and his heirs and grantees to make any further conveyance necessary to vest in the covenantee the title intended to be conveyed, and it relates to an interest which could have been but was not conveyed by the deed containing the covenant, and it is broken only by refusal or omission to convey after a proper definite demand, and a bill in equity will ordinarily lie for specific performance. (11 Cyc. 1073, 1121; 8 Am. & Eng. Ency. of Law [2d ed.], 219; Gerard Titles [5th ed.], 571; *Hallett* v. *Middleton*, 1 Russ. 243; 46 Eng. Ch. 214; *Fain* v. *Ayers*, 1 Russ. 259n; 46 Eng. Ch. 229; *Armstrong* v. *Darby*, 26 Mo. 517; *Miller* v. *Parsons*, 9 Johns. 336; *Colby* v. *Osgood*, 29 Barb. 339; *Ernst* v. *Parsons*, 54 How. Pr. 163.) Section 253, subdivision 4, of the present Real Property Law provides that the covenant that the grantor will "execute or procure any further necessary assurance of the title to said premises," or a similar covenant, "must be construed as meaning that the grantor and his heirs, or successors, and all and every person or persons whomsoever lawfully or equitably deriving any estate, right, title or interest of, in, or to. the premises conveyed by, from, under, or in trust for him or them, shall and will at any time or times thereafter upon the reasonable request, and at the proper costs and charges of the grantee, his heirs, successors and assigns, make, do, and execute, or cause to be made, done and executed, all and every such further and other lawful and reasonable acts, conveyances and assurances in the law for the better and more effectually vesting and confirming the premises thereby granted or so intended to be, in and to the grantee, his heirs, successors or assigns forever, as by the grantee, his heirs, successors or assigns, or his or their counsel learned in the

law, shall be reasonably advised or required." It may be that under this covenant the covenantor and his heirs and grantees might be compelled by an action for specific performance to surrender or file title papers in his or their possession essential to the covenantee's title. (See *Hallett* v. *Middleton, supra ; Fain* v. *Ayers, supra*), but it is not necessary to express an opinion on that question now, for it is not claimed that either will or a certified copy thereof was in the possession of the defendant. The plaintiff is not entitled to recover on this covenant for the further reason that expenses incurred in complying with the covenant for further assurance must be borne by the covenantee. (Laws of 1890, chap. 475, § 1, subd. 4; Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 218, subd. 4; Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 253, subd. 4.)

It follows, therefore, that the defendant is entitled to judgment, with costs.

McLaughlin, J., concurred in result; Ingraham, P. J., Miller and Dowling, JJ., concurred on second ground.

Judgment ordered for defendant as directed in opinion, with costs. Settle order on notice.

---

George D. Beattys, as Trustee in Bankruptcy of Martin V. Cook Respondent, *v.* Wallace Straiton and Valentine Cook, Jr., as Committee of the Person and Estate of Christine Straiton, an Incompetent Person, and Martin V. Cook, Appellants, Impleaded with Christine Straiton.

First Department, January 6, 1911.

Practice — brief on appeal — partnership — bequest of partnership interest subject to charge for benefit of third party — assignment to secure charge upon legacy — consideration — bankruptcy of assignor — when assignment not in fraud of creditors — Statute of Limitations — suit to set aside conveyance by bankrupt — knowledge of insolvency — time excepted from Statute of Limitations — burden of proof.

The statement of fact in a brief on appeal should have folio references to the record.