---

In the Matter of the Probate of the Last Will and Testament of MYRA CLARK GAINES, Deceased.

JULIETTA PERKINS and Another, Appellants; WILLIAM H. WILDER and Others, Respondents.

*Legatees and devisees — when they cannot object to the probate of a prior will — Code of Civil Procedure, § 2611 — when a foreign will can only be probated as a will of personal property — administration in different countries — jurisdiction of the courts of a State not the domicile of a decedent — effect of a foreign judgment — incompetent evidence — appeal from a Surrogate's Court.*

If the sole rights of persons in the estate of a testator are those of legatees and devisees under an alleged will, the probate of which was properly rejected, such persons have no standing to complain of the probate of a prior instrument as the last will and testament of the decedent.

An instrument executed in the State of Louisiana purporting to be the last will and testament of a decedent, if not executed according to the laws of the State of New York, can, under the provisions of section 2611 of the Code of Civil Procedure, be proven in the State of New York only as a will of personal property.

Apart from any statute, the administrations of estates in different countries are independent so far as the strict right of jurisdiction is concerned, and it is only as a matter of comity that the administration in one jurisdiction respects that in another ; it is doubtful whether the courts of a State not the domicile of a decedent have any further jurisdiction than to make a decree binding the assets within that State.

Because a foreign judgment cannot be impeached, it does not follow that it establishes conclusively between the parties to it the facts and grounds on which it proceeds, as would be the case ordinarily with domestic judgments.

A decree of a Surrogate's Court admitting or refusing to admit an instrument to probate as the last will and testament of a decedent, will not be reversed on appeal for an error in admitting or rejecting evidence, unless it appears that the exceptant was necessarily prejudiced thereby; such appeal is substantially a rehearing in equity, and the appellate court may examine and determine the case anew.

APPEAL by Julietta Perkins and another, legatees and devisees under an alleged will of Myra Clark Gaines, deceased, bearing date the 8th day of January, 1885, from a decree of the Surrogate's Court of the county of Kings, entered in the Kings County Surrogate's Court on the 24th day of June, 1891, refusing to admit to probate such instrument bearing date the 8th day of January, 1895, as and for the last will and testament of Myra Clark Gaines, deceased, and admitting to probate another certain instrument bearing date the 5th day of January, 1885, as and for the last will and testament of Myra Clark Gaines, deceased.

*John A. Grow, W. W. Goodrich, Belva A. Lockwood* and *Isaac Sharp*, for the appellants.

*W. T. Houston*, for William W: Christmas and others, respondents.

*W. T. Gilbert*, for William II. Wilder and others, respondents.

CULLEN, J. :

This is an appeal from a decree of the surrogate of Kings county, rejecting an alleged will of the deceased, bearing date January 8, 1885, and admitting to probate a will of the deceased bearing date January 5, 1885.

The appeal is taken by Julietta Perkins and Marie P. Evans. The appellants are not next of kin or heirs at law of the testatrix, but their sole rights accrue as legatees and devisees under the

rejected will; therefore, if the will of January 8, 1885, was properly rejected, the appellants have no standing to complain of the probate of the prior will of January 5, 1885, and the only question presented is the validity of the alleged later will.

The will sought to be probated by the appellants is holographic, and is as follows:

"NEW ORLEANS, *January 8th,* 1885.

"I, Myra Clark Gaines, being of sound mind, bequeath to my excellent friend, Mrs. Julietta Perkins, as a token of my esteem and love, that part of my estate known as the Fuentes property, and to my friend, Mrs. Marie P. Evans, one-third of the remainder of my entire estate, the balance to be equally divided between my grandchildren. I appoint Mrs. Marie P. Evans my testamentary executrix and detainer of my whole estate without bond.

"MYRA CLARK GAINES."

This will was offered for probate in the District Court of the State of Louisiana in 1885 by Marie P. Evans. The will of January fifth was also offered for probate before the same tribunal about the same time. As far as we can judge from the record, the parties to the litigation that ensued there were Mrs. Evans, Christmas and Wilder, the executors of the will of January fifth, and Christmas, who intervened as the natural tutor of his children, who are the grandchildren of the testatrix, Mrs. Gaines. Another set of grandchildren, the Whitneys, who with the Christmas children were the sole heirs at law and next of kin of the testatrix, seem in no way to have been made parties to or to have intervened in these proceedings.

The cases being tried together, the District Court adjudged the will of January fifth defective in form and rejected it without prejudice to an application for its probate in the courts of the domicile of the testatrix, and further adjudged that the holographic will of January eighth be rejected as false, fraudulent and forged.

The appellant Evans appealed from the decree, so far as it rejected the will offered by her, to the Supreme Court of the State of Louisiana, where the judgment below was affirmed.

It is conceded by all parties that the domicile and residence of Mrs. Gaines was in the county of Kings, in this State. The

respondents' first claim is that the judgment of the court of Louisiana is conclusive in these proceedings against the appellants.

As to Mrs. Perkins, she was not a party to the probate proceedings in Louisiana, and, therefore, urges that the decree in this proceeding cannot bind her. We think this is immaterial; the only interest of Mrs. Perkins, under the rejected will, is as devisee of lands in Louisiana. The rejected will not having been executed according to the laws of this State could, under the provisions of section 2611, Code of Civil Procedure, be proved here only as a will of personal property, and the rejection of the will can in nowise affect her rights. She has, in fact, no standing on this appeal; but the question remains whether the decree of the Louisiana court is conclusive against Mrs. Evans.

That decree, undoubtedly, established the fact that the rejected instrument was not the will of the testatrix, so far as administration in Louisiana is concerned. But we doubt whether it had any greater efficacy than this. Apart from any statute, all administrations of estates in different countries are independent, so far as the matter of strict right of jurisdiction is concerned; it is only as a matter of comity that administration in one jurisdiction respects those in other jurisdictions. (Williams on Executors, 263; Story on Conflict of Laws, §§ 513–518.)

We think it, therefore, doubtful at least whether, Louisiana not being the domicile of the deceased, the court of Louisiana had any further jurisdiction than to make a decree binding assets within that State.

We are not required by the Federal Constitution to give effect to anything but the judgment. While the judgment itself cannot be impeached, it does not follow that it establishes conclusively between the parties the facts and grounds on which it proceeds, as would be the case ordinarily with domestic judgments. The weight of authority in this State is against such a claim, though in the Federal courts and those of many other States the rule is different. (*Durant* v. *Abendroth*, 97 N. Y. 132, 141; *Vandenheuvel* v. *United Insurance Co.*, 2 Johns. Cas. 451.)

It is conceded that, substantially, the whole assets of the estate are in Louisiana, and it may be well doubted whether the courts of that State would suffer the administration or disposition of assets within

their jurisdiction in accordance with the provisions of a will which they have decreed to be a forgery ; but that fact would not preclude the appellants proving the will here.

Without deciding the question of estoppel of the former judgment we prefer to rest our decision on the merits.

Upon examining the record before us, we find a number of rulings of the surrogate in the admission and exclusion of evidence that we deem erroneous, but this does not require us to reverse his decree.

By section 2545 of the Code it is provided that such a decree shall not be reversed for an error in admitting or rejecting evidence, unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby.

By section 2586, where an appeal is taken upon the facts, the appellate court has the same power to decide questions of fact which the surrogate has, and it may, in its discretion, receive further testimony or documentary evidence. In pursuance of this power the appellants have taken further testimony, which has been admitted in this court on the appeal.

It is settled by authority that an appeal to this court on the facts is substantially a rehearing in equity, and that we may examine and determine the case anew. (*Burger* v. *Burger*, 111 N. Y. 523; *Gardiner* v. *Gardiner*, 34 id. 164.)

If this be the nature of the hearing we do not see why we should be concluded by the rulings of the surrogate, and why we may not rule on the evidence presented to us.

Under this view of our power we have rejected the testimony of Mrs. Whitney and Mrs. Davis as to personal transactions with the deceased, holding it to be incompetent under the rule laid down in *The Matter of Smith* (95 N. Y. 526).

The indictment of Mrs. Evans and the report of the conventional committee as to her claim were incompetent evidence against her. This also should be stricken out. There is also some slight testimony by some of the witnesses attending the sick-bed of the deceased, that she could not possibly have written the will. This also was incompetent. We have also accepted and considered the evidence produced by the appellants on the appeal to this court, and our decision is based on the record as modified by those rulings.

An examination of the evidence in the cause convinces us that

the decree of the surrogate was right, and that the holographic will offered was spurious, and not written by the deceased. We do not rest this conclusion on our own comparison of handwriting, or the testimony of the experts on that subject, but on facts which are clearly established, and our belief as to probabilities of human conduct and actions.

We think it clearly appears by the letters of the deceased that at the end of the year 1882 Mrs. Gaines, who before that time had been extremely friendly with Mrs. Evans, entertained towards her entirely different feelings. She had not only lost her affection for her, but had formed a derogatory opinion of her character. That, entertaining these views, she should have left to the appellant, who was in no wise of kin to her, nor had any claims on her bounty, one-third of her estate, thus depriving her grandchildren, her daughter-in-law and son-in-law of so much, is most unnatural. The story of how the appellant obtained the will in New Orleans is also improbable to the last degree. Even if Mrs. Evans' story were not contradicted by Mrs. Bradley, still to believe it would tax the credulity of the court to the greatest limit.

Mrs. Bradley directly contradicts Mrs. Evans as to the delivery of the will. We agree with the surrogate that the manner in which the so-called Bradley restitution was obtained tends to show that the witness Bradley was not aware of the paper she was signing; but the greatest force which could be given it under any circumstances would be to treat it as discrediting the witness Bradley, and not to operate as affirmative proof of the facts stated in the paper.

The theory of the execution of the will is unnatural and improbable. That theory as now advanced is: That in August, 1884, the deceased wrote the will with the exception of the date, which was afterwards filled in on the eighth of January at New Orleans. It was necessary, so far as probate in this State is concerned, to show that the instrument was not wholly completed in Washington, as in such a case the will would not come within the terms of the statute and be subject to probate here. Whether a holographic will, executed by a non-resident without the State, could be proved in Louisiana, we do not know. If such a will would be valid, there is no reason why its execution should not have been entire at the time.

If this will was written, except the date, in Washington, the tes-

tatrix must have left the date blank, from her knowledge or belief that, to make such an instrument valid, the completion of its execution must take place in Louisiana. That this testatrix had an accurate knowledge on the subject of the law of such wills may be conceded, for she had been in litigation over property coming through such a will for more than half a century. But if that were her intent, it would seem natural that she should have completed the execution shortly after arriving at New Orleans, instead of which, though knowing her dangerous condition, she refrained from writing the date of the will till the very day before her death, when it would supersede any prior testament. She would seem to have calculated the period of her demise with the utmost nicety.

The evidence shows to our minds that the deceased was not physically able to write the date of the will at the time alleged. Three days before she had signed a will by her mark on account of such inability. She had made also a previous will on the fourth. The authenticity of her signature to the will of the fourth seems conceded. Neither of these prior instruments make any provision for the appellant. It is argued that these prior wills were obtained by the influence of those surrounding her. We are asked to believe that this deceased was acting a double part, willing to apparently concede to the influence of those surrounding her, and conscious of her own power to defeat their object by completing the execution of the holographic will which she had concealed with her.

To believe that a woman, seventy-eight years old, in the most enfeebled condition, on her deathbed, played such a role, we cannot.

And, finally, that all these improbabilities should occur in a single case, yet that case be true, borders almost on the impossible.

Decree appealed from to be affirmed, with costs.

PRATT and DYKMAN, JJ., concurred.

Decree of the surrogate affirmed, with costs.