MARGARET B. MAYNICKE and Another, Plaintiffs, *v.* ROBERT H. MAYNICKE, Defendant.

Supreme Court, Westchester County, June 24, 1933.

*Tierney & Press* [*Harry L. Kreeger* of counsel], for the plaintiffs.

*Mitchell, Taylor, Capron & Marsh* [*George S. Mittendorf* of counsel], for the defendant.

TAYLOR (GEORGE H., JR.), J. On its face the sealed agreement of August 18, 1915, is a valid contract, the terms of which in effect obligated the defendant to pay to the plaintiff Everett $100 monthly, commencing September, 1915, for the support and care of the plaintiff Margaret B. Maynicke, the defendant's wife, during her lifetime, unless (a) she should procure a divorce *and* remarry, in which two events the defendant's liability was to terminate; or unless (b) she should indulge in intoxicating liquors to excess, in which latter event the defendant was given the option to continue the said payments, it being provided that in such event Margaret B. Maynicke should have no claim against him for support or otherwise. Concededly she never has procured a divorce from the defendant, and, of course, she has not remarried; the evidence fails to disclose that since the agreement was entered into Margaret B. Maynicke indulged in intoxicating liquors to excess, *unless* the Connecticut divorce judgment, referred to *infra,* granted to Robert H. Maynicke, the defendant, against Margaret B. Maynicke, here a plaintiff, upon the ground of her " habitual intemperance," after service upon her of process therein outside of the State of Connecticut, is *res judicata* upon the subject of indulgence by her in intoxicating liquors to excess. As to said judgment, the defendant claims and the plaintiffs deny that it is conclusive upon the parties to this action as to the relevant alleged fact of her indulgence as claimed. The defendant paid three installments upon this written obligation, namely, that for September, 1915, the one for October, 1915, and the one for November, 1915, the last of which became due, by the terms of the agreement, not later than November 5, 1915 — *more than sixty days after the date of the agreement,* August 18, 1915. It is admitted that the defendant has not paid the aggregate sum of $18,600 accruing according to the terms of the agreement as written, to the time when this action was commenced, at the specified rate of $100 per month.

The agreement *inter alia* provides that the parties thereto " hereby agree that the payment of one hundred (100) dollars per month shall be made during the lifetime of the said Margaret B. Maynicke, unless she should procure a divorce and remarry and if such events occur the payments on the part of the said Robert H. Maynicke shall cease and terminate upon her remarriage."

To repeat, these events have not happened.

The agreement also provides as follows: " In consideration of the promises herein made by the said Robert H. Maynicke and said Frank O. Everett, the said Margaret B. Maynicke agrees that should she ever procure a divorce from said Robert H. Maynicke, she will make no claim for alimony or for support or

expenses other than the payment of one hundred (100) dollars per month to the said Frank O. Everett as herein agreed;" and in another clause it is provided: "It is understood between the parties hereto that the above arrangement for the support of Margaret B. Maynicke is made on account of her present situation and *it is understood that there is no agreement on the part of any party in reference to a divorce* [italics mine] except that should a divorce action be brought by the said Margaret B. Maynicke no alimony will be demanded, otherwise, than in accordance with this agreement."

It is to be noted that there is no clause which expressly or by necessary or any implication provides that either Margaret B. Maynicke or the plaintiff Everett agreed with the defendant that Margaret B. Maynicke *would procure a divorce from the defendant;* and it must be admitted that if such an agreement had been made it is wholly improbable that it would appear in the written agreement which would thereby be vitiated. There is a clause in the agreement, however, the third which is quoted *supra,* which standing alone negatives the notion that there was any such illegal understanding. It is permissible for the defendant to establish by parol, if he can do so, that the real consideration for the written agreement was the vitiating promise of the plaintiff Everett, contrary to public policy, that Margaret B. Maynicke *would* institute an action for divorce against the defendant. The defendant contends and the plaintiffs deny that the plaintiff Everett did agree to this very thing, and that said action would be brought by Margaret B. Maynicke in Pennsylvania within sixty days. (See *Schley* v. *Andrews,* 225 N. Y. 110, 113; *Lake* v. *Lake,* 136 App. Div. 47; Dom. Rel. Law, § 51; *Goodwin* v. *Goodwin,* 4 Day [Conn.], 343, 351; *Matter of Seeley,* 56 Conn. 202; 14 Atl. 291, 292.) It is to be noted that the sixty-day period appears to be short for the acquisition of a residence in Pennsylvania, qualifying Mrs. Maynicke to bring an action for divorce. The defendant gave his testimony tending to establish the said alleged promise which, if made, would make the agreement void as against public policy. (*Schley* v. *Andrews, supra; McCraith* v. *Buss,* 198 App. Div. 524; *St. Hubert Guild* v. *Quinn,* 64 Misc. 336; *Gray* v. *Hook,* 4 N. Y. 449.) Even the fact that the agreement was under seal is not a circumstance efficient to protect an illegal contract or to prevent an inquiry into the legality of its real consideration. (*Gray* v. *Hook, supra,* citing cases.) This rule obtains in Connecticut where the agreement was made. (*Hartford-Connecticut Trust Co.* v. *Divine,* 97 Conn. 193; 116 Atl. 239; *Asbestos Products Corporation* v. *Matson,* 97 Conn. 381; 116 Atl. 680.) The

plaintiff Everett denied that he had made the illegal promise on behalf of Margaret B. Maynicke, and the defendant did not even pretend that his wife was a party personally to the alleged agreement.

The contention of the parties respectively may be stated as follows: The plaintiffs urge that the contract, concededly valid on its face, is valid in law and in fact and, in the light of defendant's conceded non-payment of the aggregate sum of $18,600, constitutes an obligation of the defendant to the plaintiffs for that sum with appropriate interest, for the plaintiff Margaret B. Maynicke has not divorced the defendant *and* remarried and has not indulged in intoxicating liquors to excess.

The defendant contends (a) that the plaintiffs' claim is barred by the Statute of Limitations, (b) that the real consideration for the written contract was the illegal one stated, and (c) that the plaintiff Margaret B. Maynicke in fact, subsequent to the making of the agreement, indulged in intoxicating liquors to excess within its contemplation, a fact which the defendant must concede is not established by other evidence, but, according to the defendant, is conclusively established by the Connecticut judgment of divorce rendered in favor of the defendant against the plaintiff Margaret B. Maynicke, in the year 1922, on the ground of her "habitual intemperance" for seven years, after service of process upon her *without the State of Connecticut,* such service not being followed by her (authorized) appearance in said action.

*Note:* There was a purported appearance in said action by some person living in the West, assuming to act as attorney in Connecticut, but it is undisputed that Margaret B. Maynicke never authorized such "appearance."

As to the Statute of Limitations, I ruled upon the trial that as the contract was a sealed instrument the plaintiff's claim in this action was not thus barred; for the contract was made in Connecticut and the seventeen-year statute of that State applies. This action was commenced within seventeen years. Such ruling is now confirmed.

In relation to the defendant's contention founded upon public policy, involving such illegal promise, I submitted to the jury the single question of fact (Civ. Prac. Act, § 459): "Did the plaintiff Everett and the defendant, at or before the execution of the agreement of August 18th, 1915, and as the real and true consideration for that agreement, in effect agree orally that within sixty days thereafter Margaret B. Maynicke would institute an action for, and would secure thereafter, a divorce from the defendant?" To which the jury returned an affirmative answer. Assuming, without conceding, that which is at least debatable,

that an arrangement to the effect suggested by this question ᴸ answer, between the trustee Everett and the defendant, to whic Margaret B. Maynicke was not privy, would be legally efficient to bind her and to destroy legally the agreement and her apparent rights thereunder, I determine that the jury's affirmative answer to this question is at least clearly against the weight of the credible evidence, for the following reasons: (a) It is based only upon the testimony of the legally interested defendant, denied by Everett, the other alleged party to the illegal arrangement, whose only interest was that of trustee for his sister; (b) the defendant's testimony is wholly and absolutely at variance with the probabilities, which are furnished *inter alia* by the form of the agreement which in effect expressly negatives any such illegal understanding, by the fact that the prominent member of the Connecticut bar under whose auspices the written contract was drawn and in whose presence the defendant claims the illegal oral understanding was had, was neither produced by the defendant as a witness on the trial, nor was his deposition as a non-resident witness produced and read; by the circumstance that Margaret B. Maynicke was not a party to the alleged illegal oral understanding which contemplated that she, not then a resident of Pennsylvania, would commence *in that State within sixty days* an action for divorce — a circumstance which, *per se*, throws sufficient discredit on the defendant's tale; by the fact of the payment of the third installment due November 5, 1915, by the defendant, *after the lapse of said sixty days* with no divorce suit brought by her; and finally by the terms of certain subsequent correspondence of the defendant in which in effect he pleads his poverty and inability to pay, but promises payment as soon as he is able to make it, and *omits to mention her failure to bring the divorce suit*, which the defendant asserts Everett agreed would be brought as above. As the finding of the jury is so clearly against the weight of the evidence, there would of necessity be a new trial of the action, except for the fact that the evidence in support of defendant's relevant contention is so weak and tenuous as to amount to nothing in law, and to constitute in the eye of the law no evidence whatever forming a basis for the finding that the alleged promise was made by Everett. (*Matter of Case*, 214 N. Y. 199, at p. 203.) The Court of Appeals, per CARDOZO, J., says: " It is still the rule, however, even in this court, that ' insufficient evidence is, in the eye of law, no evidence ' [citing cases]. In the words of MAULE, J., in *Jewell v. Parr* (13 C. B. 909, 916), ' When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established.' "

I determine that there was in law "no evidence," within the purview of the ruling in the case just cited, to go to the jury on the question which I submitted to them; therefore, the question was a legally immaterial one and the jury's answer thereto should be disregarded and their verdict embodying the same should be set aside.

This leaves for determination only the question of law whether the Connecticut judgment of divorce granted under the circumstances and for the cause stated, is conclusive between the parties to this action as a determination of the fact that the said Margaret B. Maynicke "indulged in intoxicating liquors to excess," within the purview of the written agreement of August 18, 1915. It is to be noted that the plaintiff Everett, to whom the obligation of the defendant to pay money in terms runs, was not a party to the Connecticut judgment, and that there was no finding in express terms in that judgment roll that Margaret B. Maynicke indulged in intoxicating liquors to excess. The defendant was, therefore, compelled to claim, and I think with considerable force, that such finding is implicit in the term "habitual intemperance." However that may be in the case of a judgment *in rem* (or *quasi in rem*, see *infra*), we are not "required by the Federal Constitution to give effect to anything but the judgment. While the judgment itself cannot be impeached, it does not follow that it establishes conclusively between the parties *the facts and grounds* [italics·mine] on which it proceeds, as would be the case ordinarily with domestic judgments." (CULLEN, J., in *Matter of Gaines*, 84 Hun, 520; affd., 154 N. Y. 747, citing *Durant* v. *Abendroth*, 97 id. 132, 141, and *Vandenheuvel* v. *United Insurance Co.*, 2 Johns. Cas. 451.) Further, the Connecticut judgment of divorce founded upon service upon Margaret B. Maynicke without that State is a judgment *quasi in rem* (23 Cyc. 1410) affecting her marriage status only, as distinguished from a judgment *in personam* (23 Cyc. 1406, 1407) against her; said judgment, while binding upon her as far as the valid dissolution of her marriage is concerned, *is not binding upon her in personam*. (For principle see *Bartlett* v. *Spicer*, 75 N. Y. 528; *Howard* v. *Smith*, 35 N. Y. Super. Ct. [3 J. & S.] 131; *Matter of James*, 146 N. Y. 78.) Therefore, I conclude that the finding of her "habitual intemperance" is not conclusive or any evidence of that alleged fact as between the parties to this action.

From the foregoing it follows that the defendant has no valid defense whatever in this action, and that the plaintiffs are entitled to judgment for the relief demanded in the complaint.

The motion of the plaintiffs to set aside the jury's verdict answering the special question submitted is in all respects granted and the

said verdict set aside; and the court (in pursuance of the stipulation made at the close of the trial) hereby directs the jury to find a verdict in favor of the plaintiffs against the defendant for the sum of $18,600, with interest thereon from the average date of September 5, 1923, amounting as of this date to the further sum of $10,939.90, in all, principal and interest, amounting to the sum of $29,539.90. Exception to the defendant. In pursuance of the same stipulation the said verdict thus directed is deemed to be returned and established, subject to a motion, if the defendant is advised to make it, to set aside the directed verdict. Thirty days' stay to defendant and sixty days to make and serve a case.